## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

V.M. PAOLOZZI IMPORTS INC. d/b/a
DEALMAKER HONDA OF WATERTOWN and
DEALMAKER OF POTSDAM, LLC d/b/a
DEALMAKER HONDA OF POTSDAM and
ONONDAGA DEVELOPMENT, LLC and PRIME,
L.L.C. and PHILIP J. SIMAO,

                                 Plaintiffs,

     v.

AMERICAN HONDA MOTOR CO., INC.

                                 Defendant.

Case: 7:12-cv-01052 (DNH-ATB)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY OR, IN THE ALTERNATIVE, DISMISS FOR FAILURE TO STATE A CLAIM

HOGAN LOVELLS US LLP
John J. Sullivan
Bar Roll No. 510802
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendant American
Honda Motor Co., Inc.*

TABLE OF CONTENTS

Page

A.    Procedural Background ....................................................................................... 1

B.    Plaintiffs' Allegations ......................................................................................... 2

      1.    The Opening of DealMaker Potsdam ...................................................... 3

      2.    The Honda Finance "Conspiracy" Allegations ........................................ 3

      3.    The Alleged Attempts to Sell ................................................................... 5

      4.    The Third-Party Beneficiary Claims ....................................................... 5

      5.    The "Agreement to Assist" ....................................................................... 6

ARGUMENT ................................................................................................................. 6

I.    A Stay Should Be Granted ................................................................................... 7

III.   Alternatively, The Complaint Should Be Dismissed ........................................... 8

      A.    DealMaker Potsdam Had A Contractual Duty To Be Open For
            Business ................................................................................................... 9

      B.    No "Implied Covenant" Claim Has Been Stated Concerning
            Plaintiffs' Alleged Opportunities to Sell .............................................. 11

      C.    Plaintiffs Have Not Stated A Claim for "Tortious Interference" .......... 13

      D.    The "Conspiracy" Allegations Are Deficient ....................................... 15

      E.    No Claim Is Stated Under The ADDCA ................................................ 18

      F.    The Landlords Are Not Intended Third-Party Beneficiaries ................. 19

      G.    No Contract or Breach Has Been Alleged ............................................. 20

      H.    The Punitive Damages Claim Should Be Stricken ................................ 21

CONCLUSION .............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

American Honda Motor Co., Inc., v. V.M. Paolozzi Imports, Inc.,
    7:10-cv-955 (FJS/ATB) ................................................................................. 1

Arar v. Ashcroft,
    585 F.3d 559 (2d. Cir. 2009) (en banc) .................................................. 16

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ....................................................... 8

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544, 127 S.Ct. 1955 (2007) ................................................. 8, 16

Broder v. Cablevision Systems Corp.,
    418 F.3d 187 (2d Cir 2005) ....................................................................... 8

Capital Services of New York, Inc. v. E-Poxy Indus., Inc.,
    1:00 CV 873 FJS/GHL, 2005 WL 2033494 (N.D.N.Y. Aug. 17, 2005) .................................. 7

Carvel Corp. v. Noonan,
    3 N.Y.3d 182, 785 N.Y.S. 2d 359 (2004) ............................................... 14

Chase Equipment Leasing Inc. v. Architectural Air, L.L.C.,
    84 A.D.3d 439, 922 N.Y.S.2d 69 (1st Dep't 2011) ................................ 9

Chu v. Dunkin' Donuts Inc.,
    27 F. Supp. 2d 171 (E.D.N.Y. 1998) ...................................................... 14

Dalton v. Educational Testing Service,
    87 N.Y.2d 384, 639 N.Y.S.2d 977 (1995) ...................................... 9, 11, 12

Debary v. Harrah's Operating Co., Inc.,
    465 F. Supp. 2d 250 (S.D.N.Y. 2006) .................................................... 19

Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.,
    814 F.2d 90 (2d Cir. 1987) ...................................................................... 18

Ernie Harle Ford v. Ford Motor Co.,
    260 F.3d 1285 (11th Cir. 2001) .............................................................. 15

H-D Michigan LLC v. Sovie's Cycle Shop,
    626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009) .......................................... 13

Hall v. Burger King Corp.,
    912 F. Supp. 1509 (S.D. Fla. 1995) ....................................................... 15

ii

Kenific v. Oswego County,
    2010 WL 2977267 (N.D.N.Y. July 23, 2010) ........................................................ 16

Lama Holdings Co. v. Smith Barney Inc.,
    88 N.Y.2d 413, 646 N.Y.S. 2d 76 (1996) .............................................................. 13

Leonard F. v. Israel Discount Bank,
    199 F.3d 99 (2d Cir. 1999) ...................................................................................... 8

Levine v. Yokell,
    245 A.D.2d 138, 665 N.Y.S.2d 962 (1st Dep't 1997) ............................................ 14

Major Oldsmobile, Inc. v. General Motors Corp.,
    1995 WL 326475 (S.D.N.Y. 1995), aff'd, 101 F.3d 684 (2d Cir. 1996)................. 11

McPheeters v. McGinn, Smith and Co., Inc.,
    953 F. 2d 771 (2d Cir. 1992) ................................................................................. 19

New York Univ. v. Continental Ins. Co.,
    87 N.Y.2d 308 (1995).......................................................................................21, 22

Noller v. GMC Truck and Coach Div., General Motors Corp.,
    772 P.2d 271 (Kan. 1989).................................................................................... 15

Smartix International Corp. v. Mastercard International, LLC,
    355 Fed. Appx. 464, 2009 WL 3449017 (2d Cir. 2009) ....................................... 16

State Street Bank & Trust Co. v. Inversiones Errazuris Limitada,
    374 F.3d 158 (2d Cir. 2004) ................................................................................... 9

Subaru Distributors Corp. v. Subaru of America, Inc.,
    425 F. 3d 119 (2d Cir. 2005) ...........................................................................19, 20

Tri-County Motors, Inc. v. American Suzuki Motor Corp.,
    494 F. Supp. 2d 161 (E.D.N.Y. 2007) .................................................................. 14

Walker v. Sheldon,
    10 N.Y.2d 401 (1961)........................................................................................21, 22

**STATUTES**

N.Y. Veh. & Traf. Law, § 462(2)(d)(3)(ii)................................................................... 11

N.Y. Veh. & Traf. Law, § 463(2)(k) .....................................................................12, 21

**OTHER AUTHORITIES**

3 R. Haig, Business and Commercial Litigation in Federal Courts (3d ed. 2011) ......... 17

iii

Defendant American Honda Motor Co., Inc. ("American Honda") respectfully submits this memorandum of law in support of its motion: (1) to stay this action until (a) the defendants in <u>American Honda Motor Co., Inc., v. V.M. Paolozzi Imports, Inc. et ano.</u>, 7:10-cv-955-FJS-ATB (the "Prior Action"), who are plaintiffs herein, pay all sanctions imposed and purge their continuing contempt of Court in that action and (b) the Court rules on American Honda's pending motion to dismiss the Counterclaims (which are identical to the first six claims in the Complaint herein) in the Prior Action;[1] or (2) in the alternative, to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## A.   **Procedural Background**

Plaintiffs are Philip J. Simao ("Simao") and four entities he owns.  Two of these entities are former Honda dealers – <u>viz.</u>, V.M. Paolozzi Imports, Inc. f/d/b/a DealMaker Honda of Watertown ("DealMaker Watertown") and DealMaker of Potsdam, LLC f/d/b/a as DealMaker Honda of Potsdam ("DealMaker Potsdam" and, together with DealMaker Watertown, the "Dealerships"). The other two entities – Onondaga Development, LLC ("Onondaga") and Prime, L.L.C. ("Prime") – are, respectively, the entities that own the real estate on which the Watertown and Potsdam dealerships were formerly operated.  [Complaint, ¶¶ 1-6, 9-11, 13, 16.]

The Honda Dealer Agreement of each Dealership was terminated on June 30, 2010.  [<u>Id.</u>, ¶ 11.]  American Honda had issued a notice of termination to each Dealership on May 26, 2010, after this Court ordered the seizure of the Dealerships' new Honda vehicle inventory based on their default in their loan obligations to American Honda Finance Corp. ("Honda Finance").  <u>See</u>

---

[1] With Plaintiffs' consent, American Honda has filed a "Notice of Related Cases" and asked that this action be assigned to Judge Scullin.  [Doc. 10.]

<u>American Honda Finance Corp. v. V.M. Paolozzi Imports, Inc., et al.</u>, 7:10-cv-0155-GTS-ATB (the "Foreclosure Action").

Notwithstanding their June 30, 2010 terminations, the Dealerships continued to display and use Honda trademarks, in violation of their contractual obligations and of American Honda's rights under the trademark laws.  Accordingly, American Honda filed the Prior Action seeking injunctive relief and damages for these trademark violations.  On December 13, 2011, Judge Scullin granted American Honda's motion for a preliminary injunction.  [Prior Action, Doc. 26.] By order dated February 13, 2012, Judge Scullin ordered the Dealerships to take specific actions, by specific dates, to remove all Honda trademarks from their former dealership's premises (the "Injunction").  [Prior Action, Doc. 37.]

The Dealerships did not comply with <u>any</u> of the deadlines in Judge Scullin's Injunction, and DealMaker Potsdam completely refused to take certain of the actions ordered by Judge Scullin.  By order entered on September 4, 2012, Judge Scullin found the Dealerships in contempt.  [Prior Action, Doc. 56.]  He ordered the Dealerships to (i) pay American Honda's reasonable attorneys' fees as a sanction and (ii) show cause why the Court should not impose *per diem* sanctions until the Dealerships fully comply with the Injunction.  [<u>Id.</u> at 7-8.]  Proceedings on the show cause order are currently pending.

After Judge Scullin granted American Honda's motion for a preliminary injunction, and over nine months after the deadline for amendment of pleadings, the Dealerships asserted counterclaims in the Prior Action demanding $48 million in damages (the "Counterclaims"). [Prior Action, Doc. 33.]  American Honda filed a motion to strike the Counterclaims as untimely and/or to dismiss them pursuant to Rule 12(b)(6) for failure to state a claim.  [Prior Action, Docs. 40-43.]  That motion is currently pending.

2

## B.     Plaintiffs' Allegations

The Complaint seeks to hold American Honda liable for the same transactions and occurrences at issue in the Counterclaims in the Prior Action.  Indeed, the first six claims in the Complaint are identical to the six Counterclaims.  The only differences between the two pleadings are that the Complaint (i) adds a new legal theory for recovery by the Dealerships, i.e., alleged violations of the federal Automobile Dealers' Day in Court Act (the "ADDCA") in the Seventh and Eighth Causes of Action; (ii) alleges that Onondaga and Prime are "third-party beneficiaries" of the Honda Dealer Agreements, that American Honda therefore owed them an implied duty of good faith and fair dealing under those agreements, and that American Honda breached that implied obligation (Ninth and Tenth Causes of Action); (iii) contends that American Honda breached an alleged oral or implied agreement to "assist" Plaintiffs in selling the Honda dealerships; and (iv) seeks between $10 million and $100 million in compensatory damages and between $100 million and $1 billion in punitive damages.

Just like the Counterclaims, the Complaint seeks to hold American Honda liable with respect to three subject matters: (1) the opening of DealMaker Potsdam in 2008; (2) Honda Finance's decision to foreclose on the Dealerships' defaulted loans in 2010 rather than agree to a "work-out" settlement – claims that have already been rejected in a final judgment entered in the Foreclosure Action on March 29, 2012 [Foreclosure Action, Docs. 72-73]; and (3) alleged efforts by Plaintiffs in 2009 and 2010 to sell the Dealerships and/or sell or lease the property on which the Dealerships were located.

### 1.     The Opening of DealMaker Potsdam

DealMaker Watertown became a Honda dealer pursuant to a Honda Dealer Agreement dated September 14, 2004.  [Complaint, ¶ 9 and Ex. A thereto.]  DealMaker Potsdam became a

Honda dealer pursuant to a Honda Dealer Agreement dated June 21, 2008. [Complaint, ¶ 10 and Ex. B thereto.]

Despite signing the Dealer Agreement in June 2008, as of October 2008 DealMaker Potsdam had not opened for business. Accordingly, American Honda advised DealMaker Potsdam that it would terminate the Dealer Agreement if DealMaker Potsdam did not open promptly. [Complaint, ¶ 21.] In the First Cause of Action (¶¶ 57-59), Plaintiffs allege that American Honda breached its "implied covenant of good faith and fair dealing" (the "implied covenant") to DealMaker Potsdam by "forcing" the dealership to open in November 2008 during an "unprecedented recession in the automotive industry" (¶ 58; see ¶¶ 20-23).

### 2.   The Honda Finance "Conspiracy" Allegations

In the Second and Sixth Causes of Action, the Dealerships allege that American Honda breached the implied covenant by (a) "colluding with Honda Finance to prevent a forbearance or work out agreement between [the Dealerships] and Honda Finance" [Second Cause of Action, ¶ 61] and (b) "colluding and coordinating its actions with Honda Finance with the purpose and effect of terminating the dealerships without allowing the [Dealerships] to realize economic benefit therefrom . . ." [Sixth Cause of Action, ¶ 73]. These claims – against which Honda Finance won summary judgment in the Foreclosure Action [Doc. 72] – are based on the following allegations:

Honda Finance provided floor plan and other financing to the Dealerships. [Complaint, ¶ 25.] In 2009, the Dealerships were struggling to make required payments to Honda Finance. [Id., ¶ 26.] In August 2009, Honda Finance representatives met with Simao to discuss his "plans" to sell Dealmaker Watertown and/or "the Watertown location" to an undisclosed purchaser for $4.4 million. [Id., ¶ 28.] Plaintiffs allege, "[u]pon information and belief, [that American] Honda received the same information." [Id.] Honda Finance allegedly "promised to work with the

4

[Dealerships] through [their] financial difficulties and induced and prevailed on Simao and Dealmaker Watertown to cease its negotiations with the potential buyer." [Id.]

In February 2010, however, Honda Finance commenced the Foreclosure Action seeking (successfully) to repossess the Dealerships' vehicle inventory and recover monetary damages, despite its alleged promise and the Dealerships' efforts to come up with a workout plan. [Complaint, ¶ 37; see id. at ¶¶ 32-36.] Plaintiffs allege that Honda Finance commenced the Foreclosure Action in "bad faith," even though the Court has ruled against them on that issue in the Foreclosure Action. [Id., ¶ 37; see Foreclosure Action, Doc. 72.]

Plaintiffs allege that, during their unsuccessful negotiations with Honda Finance, Simao sought American Honda's promise that it would not terminate the Dealerships' franchises if the Dealerships reached a workout agreement with Honda Finance. [Complaint, ¶ 41.] Simao, however, "was rebuffed by representatives of [American] Honda, who refused to provide any assurances . . . ." [Id., ¶ 42.] Plaintiffs claim that the negotiations with Honda Finance "foundered when Honda Finance insisted that [American] Honda be released by the [Dealerships] as a condition of any agreement between the [Dealerships] and Honda Finance." [Id., ¶ 43.] Plaintiffs then conclude that, "[a]s a direct result of [American] Honda's position and actions no agreement was reached between the [Dealerships] and Honda Finance." [Id., ¶ 47.]

### 3.   The Alleged Attempts to Sell

Plaintiffs base two more "implied covenant" claims, and one "tortious interference with contract" claim, on allegations concerning two alleged attempts to sell one or both of the Dealerships and/or the property on which they were located (Third, Fourth and Fifth Causes of Action).

One of the two purported sales attempts was the "plan" to sell DealMaker Watertown and/or the "Watertown location" that was allegedly mentioned to Honda Finance in August

2009, as discussed above.  [Complaint, ¶ 28.]  Plaintiffs, however, make no allegation that American Honda ever did anything with respect to that "plan."

As for the other attempted sale, Plaintiffs allege that, "[i]n 2010," they spoke to the Carbone Group ("Carbone"), an existing Honda dealer in another market, who "wished to purchase the real estate from Potsdam DealMaker [sic]."[2] [Id., ¶ 48.]  American Honda, however, allegedly "refused to approve the Carbone group for the Potsdam location."  [Id., ¶ 50.]

### 4.     The Third-Party Beneficiary Claims

In the Ninth and Tenth Causes of Action, Onondaga and Prime allege that they are third-party beneficiaries of, respectively, the Watertown Dealer Agreement and the Potsdam Dealer Agreement.  Plaintiffs do not point to any language in either Dealer Agreement on which they base their third-party beneficiary claims. [See Complaint, ¶¶ 80-85.]

### 5.     The "Agreement to Assist"

In the Eleventh Cause of Action, Plaintiffs incorporate their prior allegations (¶ 86) and then allege that American Honda breached an "agreement" to "assist" the Dealerships and Simao "to sell the dealerships in an orderly manner as going concerns." [Complaint, ¶ 87.] There is, however, no prior allegation anywhere in the Complaint that American Honda entered into any such agreement, much less breached it. The Complaint alleges only that Honda Finance promised, in August 2009, to "work with" the Dealerships. [Complaint, ¶ 28.] The Complaint does contain the allegation, oddly made "[u]pon information and belief," that in August 2009 "and subsequent times representatives of [American] Honda specifically assured Simao and representatives of the [Dealerships] that [American] Honda would assist and cooperate in Plaintiffs efforts to sell the dealerships in an orderly way as ongoing concerns." [Complaint, ¶

_____

[2] DealMaker Potsdam did not own the real estate, Prime did.

30.] This "information and belief" allegation, however, does not state that any contract or agreement was entered into.

## ARGUMENT

### I.    A STAY SHOULD BE GRANTED

This action should be stayed until (a) the Dealerships purge their contempt and pay all sanctions imposed in the Prior Action and (b) Judge Scullin rules on the pending motion to strike or dismiss the Counterclaims in the Prior Action.

Preliminarily, American Honda notes that, with Plaintiffs' consent, American Honda has filed a "Notice of Related Cases," asking that this action be assigned to Judge Scullin. [Doc. 10.] Plaintiffs indicated that the Prior Action was a related case on their civil cover sheet when they filed this action. [Doc. 1-3, sec. VIII.]  Plaintiffs, however, did not immediately follow up by filing a Notice of Related Cases pursuant to this Court's General Order No. 12, ¶ G.

The claims asserted in the Complaint arise out of the same transactions and events as alleged in the Counterclaims asserted by the Dealerships in the Prior Action.  In addition, the first six Causes of Actions in the Complaint are identical to the six Counterclaims.

The Dealerships should not be permitted to pursue upon their own claims while failing to comply with Court orders.  See Capital Services of New York, Inc. v. E-Poxy Indus., Inc., 1:00 CV 873 FJS/GHL, 2005 WL 2033494, at *7 (N.D.N.Y. Aug. 17, 2005) (Scullin, J.) (precluding litigation of claims until contemnors paid contempt judgment in full).

Moreover, the Counterclaims are subject to a pending motion to strike or dismiss in the Prior Action.  The resolution of that motion could have a substantial effect on the claims in this case.  For example, if the Court grants American Honda's motion to dismiss the Counterclaims, that ruling will be applicable to most or all of the Complaint in this case.  It would be a waste of

judicial resources to address American Honda's motion to dismiss the Complaint herein until there is a ruling on the pending motion to strike or dismiss the Counterclaims.

## II.   ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED

If a stay is granted, the Court need not reach this part of American Honda's motion. Otherwise, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true," to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (emphasis added).

In considering whether to dismiss for failure to state a claim, the Court is confined to the allegations in the Complaint, including any documents attached to or incorporated by reference into the Complaint, and matters of which the Court may take judicial notice. Leonard F. v. Israel Discount Bank, 199 F.3d 99, 107 (2d Cir. 1999). "Where a [claimant] has relied on the terms and effect of a document in drafting the [claim] and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted.). Here, Plaintiffs allege that American Honda

8

breached "implied covenants" in the Dealerships' Honda Dealer Agreements, and they attach those Dealer Agreements as Exhibits A and B to the Complaint.  Accordingly, these contents of the Dealer Agreements may be considered on this motion.

Seven of Plaintiffs' 11 substantive Causes of Action are for breach of the implied covenant of good faith and fair dealing.  The implied covenant generally forbids either party from doing anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995).  The implied covenant, however, cannot be used to "imply" obligations that are "inconsistent with other terms of the contractual relationship."  Id. at 389, 639 N.Y.S.2d at 980; see, e.g., Chase Equipment Leasing Inc. v. Architectural Air, L.L.C., 84 A.D.3d 439, 922 N.Y.S.2d 69 (1st Dep't 2011) (affirming dismissal of implied covenant claim against lender who seized collateral rather than agree to plaintiff's proposals); State Street Bank & Trust Co. v. Inversiones Errazuris Limitada, 374 F.3d 158, 170 (2d Cir. 2004) (borrower's allegation that bank unreasonably withheld consent to an asset sale did not state a claim where contract gave bank unrestricted right to withhold consent).

### A.      DealMaker Potsdam Had A Contractual Duty To Be Open For Business

In the First Cause of Action, Plaintiffs allege that American Honda breached the implied covenant by requiring DealMaker Potsdam to open for business in November 2008.  This "implied covenant" claim attempts to create a right that is inconsistent with the terms of the Dealer Agreement – i.e., a right to be a Honda dealer but not be open for business.

Article 9 of the Dealer Agreement, entitled "Term of Dealer Agreement," provides that the "Dealer Agreement is made for the period set forth in the Dealer Agreement Term Attachment hereto, unless sooner expired."  [Doc. 1-2, p. 9 of 61.]  The Term Attachment provides that the term is from June 26, 2008 to June 30, 2013.  [Doc 1-2, p. 41 of 61.]

9

In Article 17.5 of the Dealer Agreement, DealMaker Potsdam agrees that "Dealership Operations will be conducted in the normal course of business during and for not less than the days of the week and hours of the day customary for automobile dealerships in the Dealer's Area of Statistical Analysis." [Doc. 1-2, p. 22 of 61]  Article 24.11 defines "Dealership Operations" as "all operations contemplated by the Dealer Agreement," including "the display, sale and service of Honda Products."  [Doc. 1-2, p. 38 of 61.]  The Agreement, of course, imposes numerous other obligations concerning operations, including but not limited to the duty "to effectively promote and sell, at retail to the end user, Honda Products . . . and to promote and render service to the end user." [Doc. 1-2, p. 14 of 61.]

Yet, as the Complaint acknowledges, DealMaker Potsdam had not yet opened for business by early November 2008 – months into the term of the Agreement.  Thus, based on its own allegations, DealMaker Potsdam was in breach of the Dealer Agreement.

American Honda's demand that DealMaker Potsdam open for business or face termination was in accord with American Honda's express contractual rights under the Dealer Agreement.  Article 20.4.C provides that DealMaker Potsdam's "abandonment of Dealership Premises or failure to maintain all required aspects of Dealership Operations as an ongoing business, fully staffed and open during customary business hours for the days and hours as are customary for automobile dealerships in the Area of Statistical Analysis," is "recognized" as "contrary to the spirit and objectives of the Dealer Agreement and is therefore grounds for its termination."  [Doc. 1-2 at p. 27 of 61.]  Article 20.4.C also provides that "[f]ailure of the Dealership Premises to remain open for seven (7) consecutive days will constitute, without more, such abandonment."  [Id.]

10

Moreover, the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. L. §§ 460 et seq. (the "Act") – which regulates the franchisor's enforcement of the franchise agreement and is designed to protect dealers – expressly recognizes the right of a franchisor to terminate a dealer on accelerated, 15 days' notice for "the failure of the franchised motor vehicle dealer to conduct its customary sales and service operations for a continuous period of seven business days, except for Acts of God or circumstances beyond the direct control of the [dealer] or when any license required by the [dealer] is suspended for a period of thirty days or less."  Act, § 462(2)(d)(3)(ii).  See Major Oldsmobile, Inc. v. General Motors Corp., 1995 WL 326475, at *5 (S.D.N.Y. 1995) (upholding termination of dealer who failed to conduct sales operations), aff'd, 101 F.3d 684 (2d Cir. 1996).

Thus, DealMaker Potsdam's attempt to invoke the "implied covenant" to create a right not to be open for business during customary business hours and yet retain its franchise is "inconsistent with other terms of the contractual relationship."  Dalton, 87 N.Y.2d at 389, 639 N.Y.S.2d at 980. The First Cause of Action should be dismissed for failure to state a claim upon which relief can be granted.

### B.    No "Implied Covenant" Claim Has Been Stated Concerning Plaintiffs' Alleged Opportunities to Sell

Defendants allege that American Honda also breached the "implied covenant" (i) to DealMaker Watertown "by causing DealMaker Watertown to cease its efforts to sell to the [July 2009] proposed purchaser in reliance on Honda Finance's promise to assist in the sale and continued operation of both dealerships" [Third Cause of Action, ¶ 64 (emphasis added)]; and (ii)  to both DealMaker Potsdam and DealMaker Watertown "by refusing [in 2010] to approve [Carbone] to take over the [Potsdam] location" [Fifth Cause of Action, ¶ 70].

11

Once again, these implied covenant claims must be considered in light of the "other terms of the contractual relationship." Article 20.4.B of the Dealer Agreement provides that the Dealer may not sell or otherwise transfer any interest in the dealership "without the prior written consent of American Honda." [Doc. 1-1, p. 27 of 60; Doc. 1-2, p. 27 of 61.]  In connection with any proposal to sell, Article 19.2 of the Dealer Agreement requires the submission of a written, "bona fide ownership transfer agreement" and "the proposed third party purchaser's application (as defined by American Honda)." [Doc. 1-1, pp. 24-25 of 60; Doc. 1-2, pp. 24-25 of 61.]  These requirements conform to standard industry practice, as recognized in the Act, which gives the franchisor sixty (60) days after receipt of the dealer's request for consent to a transfer to approve or disapprove, "provided [the dealer's] request is accompanied by proper documentation as may reasonably be required by the franchisor."   Act, § 463(2)(k).   The franchisor may not unreasonably withhold consent and must give the dealer written notice and "specific reasons" for the withholding of consent. Id.

In light of these terms of the contractual relationship, the Dealerships' allegations are insufficient to state a claim that American Honda deprived them of "the fruits of the contract." Dalton, 87 N.Y.2d at 389, 639 N.Y.S.2d at 979.

First of all, Plaintiffs do not allege that they actually entered into any agreement to sell either dealership, much less submitted any bona fide transfer agreement or any third-party purchaser application to become a Honda dealer.  In the absence of such submissions, American Honda had no duty to approve a sale.

Second, with respect to the July 2009 "undisclosed purchaser" of DealMaker Watertown, Defendants merely allege that Honda Finance promised to assist in the sale. [Complaint, ¶ 64.] The Complaint contains no allegations on which American Honda could be held liable.

Third, with respect to the purported Carbone transaction, the Complaint does not even allege that DealMaker Potsdam ever made an agreement with Carbone, or ever proposed, to transfer its Honda <u>franchise</u>.   The Complaint alleges that DealMaker Potsdam proposed to transfer the real estate to Carbone – even though DealMaker Potsdam does not own the real estate.   American Honda had no power – much less a duty – to approve or disapprove a sale of the real estate by its owner, Prime.

What Plaintiffs are alleging here is that American Honda had an obligation to help induce Carbone to buy (or lease) Prime's real estate by offering Carbone a Honda franchise in Potsdam.[3] There is absolutely no basis in the Dealer Agreement for contending that American Honda had any obligation to do so.

In short, Plaintiffs have failed to state an "implied covenant" claim based on their alleged opportunities to sell the Watertown dealership in 2009 or the Potsdam real estate in 2010.

### C.   <u>Plaintiffs Have Not Stated A Claim for "Tortious Interference"</u>

Plaintiffs also allege that American Honda "tortiously interfered with the agreement to sell DealMaker Watertown to the undisclosed purchaser."   [Fourth Cause of Action, ¶ 67.] Plaintiffs have failed to state a claim for at least three reasons.

First, the elements of "tortious interference with contract" require that there be an existing, enforceable contract that the defendant knew about and procured the breach of.   <u>Lama Holdings Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424, 646 N.Y.S. 2d 76, 82 (1996). Notwithstanding the conclusory allegation in paragraph 67, the Complaint <u>never</u> alleges that DealMaker Watertown actually entered into a contract with the "undisclosed purchaser" to sell

---

[3] Notably, Plaintiffs do not specify the date in 2010 when the Carbone transaction was discussed. If it occurred after the May 26 Notice of Termination of the franchise, DealMaker Potsdam had no right to sell its Honda franchise any longer.   See <u>H-D Michigan LLC v. Sovie's Cycle Shop</u>, 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009).

13

the dealership.  It simply alleges that DealMaker Potsdam had "plans" to do so.  [Complaint, ¶ 28.]  Accordingly, the Complaint fails to state a claim for tortious interference with contract.

Second, the claim fails even if it is considered as one for interference with a "prospective" contractual relationship.  For this tort, Plaintiffs must allege interference done by "wrongful means" – i.e., conduct rising to the level of a crime or an independent tort – or done for the sole purpose of inflicting intentional harm on the claimant.  Carvel Corp. v. Noonan, 3 N.Y.3d 182, 785 N.Y.S. 2d 359 (2004).  Here, the Complaint alleges only that Honda Finance promised to "work with" Plaintiffs.  There is no allegation that American Honda did anything with respect to the sale.  Thus, the Complaint clearly does not satisfy the applicable standard.

Third, American Honda's obligation to approve or disapprove a sale of the franchise is governed by a contract.  Accordingly, any failure by American Honda to approve a sale is either a breach of contract, or it is not.  It cannot be converted into a tort.  Tortious interference will lie only against a stranger to the contractual relationship; here, however, the "undisclosed purchaser" was seeking ultimately to enter into a franchise agreement with American Honda. For these reasons, courts in New York and elsewhere have repeatedly held that no claim for tortious interference will lie against a franchisor or other party who has the right to approve or disapprove the contract or prospective contract allegedly interfered with.  See Levine v. Yokell, 245 A.D.2d 138, 665 N.Y.S.2d 962 (1st Dep't 1997) (affirming grant of motion to dismiss a tortious interference claim against a co-op board for declining to approve the sale of a co-op); Tri-County Motors, Inc. v. American Suzuki Motor Corp., 494 F. Supp. 2d 161, 175 (E.D.N.Y. 2007) (in case involving sale of motor vehicle dealership, the franchisor "can incur no liability for tortious interference by simply exercising its right to not approve the sale transaction"); Chu v. Dunkin' Donuts Inc., 27 F. Supp. 2d 171, 173 (E.D.N.Y. 1998) (in sale of franchise, a cause of

14

action for tortious interference does not lie against franchisor); <u>accord</u>, <u>Noller v. GMC Truck and Coach Div., General Motors Corp.</u>, 772 P.2d 271 (Kan. 1989) (affirming dismissal of claims for interference with contract and prospective business advantage arising from franchisor's refusal to approve sale); <u>Ernie Harle Ford v. Ford Motor Co.</u>, 260 F.3d 1285, 1294 (11th Cir. 2001) (claim for tortious interference does not lie for automobile franchisor's refusal to approve a transfer); <u>Hall v. Burger King Corp.</u>, 912 F. Supp. 1509, 1528-29, 1537-38 (S.D. Fla. 1995) (because the franchisor had the contractual right to approve or disapprove the transfer, claims for tortious interference with contract and prospective contract will not lie "as a matter of law").

### D.     The "Conspiracy" Allegations Are Deficient

In the Second and Sixth Causes of Action, Plaintiffs allege that American Honda breached the "implied covenant" by "colluding" with Honda Finance (i) "to prevent a forbearance or work out between [the Dealership] and Honda Finance" (the "Workout Conspiracy") [Second Cause of Action, ¶ 61] and (ii) to "terminat[e] the dealerships without allowing [the Dealerships] to realize economic benefit therefrom" (the "Termination Conspiracy") [Sixth Cause of Action, ¶ 73].

These claims should be dismissed because (i) Plaintiffs have not alleged "factual content" allowing a reasonable inference that American Honda is liable for Honda Finance's alleged acts based on conspiracy; (ii) no "plausible" conspiracy is alleged; and (iii) the alleged purposes and effects of the conspiracy did not violate the "implied covenant."[4]

"[A] conclusory allegation of agreement at some unidentified point," and/or "a naked assertion of conspiracy," are insufficient to state a claim. <u>Twombly</u>, 550 U.S. at 557, 127 S.Ct. at 1966.  The claimant "'must provide some factual basis supporting a meeting of the minds,

---

[4] Not to mention that the alleged <u>actor</u> in the conspiracy, Honda Finance, has been absolved of any liability in the Forbearance Action, 7:10-CV-00155-GTS-ATB, Doc. No. 72.

such that defendants entered into an agreement, express or implied, to achieve the unlawful end.'" Arar v. Ashcroft, 585 F.3d 559, 569 (2d. Cir. 2009) (en banc) (citation omitted).  If the facts alleged are consistent with each "co-conspirator" independently pursuing its own commercial interests, the pleading is insufficient "without that further circumstance pointing toward a meeting of the minds." Twombly, 550 U.S. at 557, 127 S.Ct. at 1966.  In addition, the alleged conspiracy must be "plausible." Id. at 557-60, 564-70; see, e.g., Smartix International Corp. v. Mastercard International, LLC, 355 Fed. Appx. 464, 2009 WL 3449017, at *2 (2d Cir. 2009) (upholding dismissal of plaintiff's RICO claims; plaintiff failed to plausibly assert that an individual defendant who may have illegally accessed plaintiff's proprietary information did so at the behest of the other defendants); Kenific v. Oswego County, 2010 WL 2977267, at *17-18 (N.D.N.Y. July 23, 2010) (plaintiffs did not allege facts that plausibly suggested either an agreement between two or more of the defendants, or a concerted act to inflict an illegal injury).

Plaintiffs do not allege any facts supporting a "meeting of the minds" between Honda Finance and American Honda with respect to either the Workout Conspiracy or the Termination Conspiracy.  Instead, the alleged facts demonstrate that each of the alleged conspirators was acting consistently with its own commercial interests:  Honda Finance, to protect its interest in recovering on its loans; American Honda, to protect its interest in having Honda dealers who perform their Dealer Agreements (or terminating them if they do not).

Moreover, neither of the alleged conspiracies is plausible.  With respect to the Workout Conspiracy, if it had been Honda Finance's goal to prevent a workout, it would have had no need to conspire or collude with American Honda to do so – all it needed to do was refuse to agree to a workout!  Plaintiffs try to tie American Honda to Honda Finance's actions by alleging that Honda Finance "insisted that [American Honda] be released by the DealMaker entities as a

16

condition of any [workout] agreement between the DealMaker entities and Honda Finance."
[Id., ¶ 84.] [5]  While this allegation was apparently included to show that the conspiracy was
designed to confer benefits on American Honda, the link lacks any logic whatsoever.  Since the
purpose of the conspiracy was to prevent a workout, American Honda would have received the
alleged benefit (the release) only if the alleged conspiracy failed and a workout were agreed to.

The Termination Conspiracy is similarly implausible.  Honda Finance had nothing to
gain from the Dealerships' termination, since termination would have ended the Dealerships'
ability to earn revenue and pay off their loans.

Finally, even if Plaintiffs could allege facts supporting a conspiracy – which they have
not – and even if the conspiracy allegations were plausible – which they are not – the alleged
purposes of the conspiracy were not unlawful, i.e., they do not amount to a violation of the
"implied covenant." Plaintiffs complain that American Honda would not "cooperate" with a
possible forbearance agreement between Honda Finance and the Dealerships by agreeing not to
exercise its termination rights under the Dealer Agreement.  A contracting party, however, does
not breach the implied covenant by refusing to waive its rights under its contract.

The Dealer Agreement gives American Honda the right to terminate on a number of
grounds:  failure to be open for business, failure to maintain licenses, unauthorized transfer of
ownership, unauthorized relocation, failure to pay accounts, submission of false information,
price-fixing, death or incapacity of owner, consumer fraud, conviction of a crime, dispute among

---

[5] There is nothing unusual or suspicious about such a demand; it is standard practice in order to
prevent the very type of vicarious liability claims being asserted here.  See 3 R. Haig, Business
and Commercial Litigation in Federal Courts, § 33.68 at 996 & n.5 (3d ed. 2011).   Honda
Finance, like any corporation, would have achieved an illusory "peace" if it settled with
Plaintiffs and Plaintiffs had then turned around and sued an affiliate for the same events.  In such
a post-settlement lawsuit, the burden of discovery would remain on Honda Finance, and Honda
Finance's shareholders would be derivatively exposed to the same liability for which it had
obtained a release.

management, failure to comply with facilities standards, impairment of financial standing, failure to advertise, and failure to perform adequately as to sales, service, parts or customer satisfaction. (Doc. 1-1 and 1-2, ¶ 20.4 A-D.)  American Honda had no obligation to waive or compromise on any of these contractual rights.  What Plaintiffs are contending is that, to perform its "implied covenant," American Honda had to accept and agree not to terminate a dealer who may have thereafter breached the Dealer Agreement by failing to maintain adequate dealership operations or committing consumer fraud or other unlawful acts.  Such a waiver of contract rights is not required by the obligation of "good faith."  In fact, any such waiver would arguably have been an act of "bad faith" to all other Honda dealers who are required to comply with the Dealer Agreement.

In short, Plaintiffs have failed to state a claim that American Honda, in conspiracy or collusion with Honda Finance, breached the implied covenant.

E.      **No Claim Is Stated Under The ADDCA**

In the Seventh and Eighth Causes of Action, the Dealerships allege that American Honda violated the Automobile Dealer's Day In Court Act, 15 U.S.C. §§ 1221 et seq. (the "ADDCA"). While the ADDCA allows a dealer to sue for the manufacturer's failure to act in good faith, "[t]he term 'good faith,' in [ADDCA] terms, has a narrow, restricted meaning."  Empire Volkswagen Inc. v. World-Wide Volkswagen Corp., 814 F.2d 90, 95 (2d Cir. 1987).  "Failure to act in good faith under the [ADDCA] can be found only 'where there is evidence of a wrongful demand enforced by threats of coercion or intimidation.'"  Id. at 95-96 (citations omitted).

The Complaint does not satisfy either of the required elements of an ADDCA cause of action under Empire Volkswagen.  It does not allege that American Honda made any "wrongful demand" or any "threats of coercion or intimidation."  Accordingly, no ADDCA claim is stated.

18

F.     **The Landlords Are Not Intended Third-Party Beneficiaries**

In their Ninth and Tenth Causes of Action, Plaintiffs allege that Onondaga and Prime are third-party beneficiaries of the Dealer Agreements and that they therefore have a cause of action for breach of the "implied covenant." [Complaint, ¶¶ 80-85].  As a matter of law, however, neither Prime nor Onondaga is a third-party beneficiary who can sue for breach of the Dealer Agreements.

In order to recover as a third-party beneficiary, plaintiff must establish that the parties to the contract <u>intended</u> to confer a benefit on the plaintiff.  <u>See</u> <u>Subaru Distributors Corp. v. Subaru of America, Inc.</u>, 425 F. 3d 119, 124 (2d Cir. 2005) (upholding dismissal of third-party beneficiary claims where contracts in question did not support an inference that sub-distributor was an intended beneficiary of a distribution contract); <u>McPheeters v. McGinn, Smith and Co., Inc.</u>, 953 F. 2d 771, 773 (2d Cir. 1992) (rejecting claim that plaintiff was entitled to enforce agreement as third-party beneficiary; plaintiff was only an incidental beneficiary of the agreement in question).

Under New York law, "the parties' intention to benefit the third party must appear from the four corners of the instrument[.]" <u>Debary v. Harrah's Operating Co., Inc.</u>, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (internal quotation omitted).  Onondoga's and Prime's third-party beneficiary claims must be dismissed because they cannot – and have not even tried to – identify any contractual language supporting an inference that the Dealer Agreements were intended to convey a benefit on them.

The Dealer Agreements are standard form agreements between American Honda and the "Dealer."  No provisions were added to the standard form for either Watertown or Potsdam indicating any intent to confer any benefit on their respective landlords.  [<u>See</u> Complaint Exs. A and B.]  Section 1 of each Dealer Agreement states that the purpose of the agreement is to "set

forth the rights and obligations of Dealer and American Honda with respect to current and potential customers and each other." [Complaint, Ex. A, ¶ 1, Ex. B, ¶ 1.] See Subaru, 425 F.3d at 125 (finding that similar language regarding the purpose of an automotive distribution agreement "strongly suggest[s]" that the parties intended the contract to concern and benefit only themselves, and not unnamed third parties). Likewise, the "Dispute Resolution" provision of each Dealer Agreement refers only to the Dealer and American Honda, and does not contemplate that other parties may be in a position to have a dispute under either Dealer Agreement. [Complaint, Ex A, ¶ 22, Ex. B, ¶ 22.] See Subaru, 425 F.3d at 125 (finding that an arbitration clause that did not include third parties suggested that the parties to the contract did not envision that third parties would be in a position to bring suit under the contract). These provisions demonstrate that the parties to the Dealer Agreements did not intend the agreement to have any third-party beneficiaries.

G.   **No Contract or Breach Has Been Alleged**

In the Eleventh Cause of Action, Plaintiffs allege that American Honda "breached its agreement to assist Plaintiff dealers and Plaintiff Simao to sell the dealerships in an orderly manner as going concerns." [Complaint, ¶ 87.] However, the Complaint never previously alleges that any such agreement existed or explains how American Honda breached it.

Among other things, the Complaint never alleges: when the "agreement" was made; who were the parties; who made the agreement on American Honda's behalf; what American Honda agreed to do; what consideration was given by the Dealerships and/or Simao; what the other terms and conditions were; what provision of the agreement American Honda supposedly breached, or when or how American Honda did so.

The Complaint does allege, "[u]pon information and belief at this [i.e., August 2009] and subsequent times representatives of [American] Honda specifically assured Simao and

20

representatives of the [Dealerships] that [American] Honda would assist and cooperate in Plaintiffs' efforts to sell the dealerships in an orderly way as ongoing concerns." [Complaint, ¶ 30.] But an alleged "assurance" is not the same thing as a contract. Moreover, if the Dealerships or Simao had entered into a contract with American Honda, they would presumably know this; they would not need to plead it on "information and belief."

Further, imposing any obligation on American Honda to assist the Dealer in selling its dealership would be a material amendment to the Dealer Agreement, under which (1) the Dealer has no right to sell without American Honda's prior written consent and (2) American Honda has no obligation except not to unreasonably withhold consent to a properly submitted and documented written transfer proposal. [Doc. 1-1 and 1-2, Arts. 19 and 20.4.B; see Act, § 463(2)(k)]. Article 23.10 of the Dealer Agreement provides that "[t]he terms of the Dealer Agreement may not be modified except in writing signed by an authorized officer of Dealer and one of the persons specified in Article 23.1 for American Honda." [Doc. 1-1, p. 36 of 60; Doc. 1-2, p. 36 of 61.] The Complaint does not allege the existence of any such writing.

In short, the Complaint contains no "factual content" adequately pleading the existence of a contract or breach thereof. The Eleventh Cause of Action should be dismissed.

**H.      The Punitive Damages Claim Should Be Stricken**

In the Eleventh Cause of Action, Plaintiffs demand punitive damages. [Complaint, ¶ 91.] "Where a lawsuit has its genesis in a contractual relationship," plaintiffs must plead the following elements to state a claim for punitive damages: "(1) defendant's conduct [is] actionable as an independent tort; (2) the tortious conduct [is] of the egregious nature set forth in Walker v. Sheldon (10 N.Y.2d 401, 404-405 [1961]) (3) the egregious conduct [is] directed to plaintiff; and (4) it [is] part of a pattern directed at the public generally." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (1995). In Walker v. Sheldon, the Court of Appeals

held that punitive damages are available only where defendant's conduct is "gross" and "morally reprehensible" and of "such wanton dishonesty as to imply a criminal indifference to civil obligations." 10 N.Y.2d at 404-05.

Plaintiffs' allegations do not meet any of the required elements.  While Plaintiffs have attempted to plead "tortious interference," they have failed to state a claim, as shown above. Moreover, even Plaintiffs' inadequately-pleaded tortious interference claim is based on the Dealerships' contractual relationship with American Honda.   Plaintiffs do not allege that American Honda actually <u>did</u> anything to "interfere" with their "plans" to sell the "Watertown location" to the "undisclosed purchaser"; they simply allege, "[u]pon information and belief," that American Honda did not follow through on "assur[ances]" that it "would assist and cooperate" in a sale.  [Complaint, ¶ 30.]  This does not meet the "independent tort" requirement. <u>See</u> <u>New York Univ. v. Continental Ins. Co.</u>, 87 N.Y.2d at 316 (tort must be "apart from and independent of promises made").

Moreover, while the Complaint contains a "formulaic recitation" of the <u>Walker v. Sheldon</u> language, there is no "factual content" in the Complaint that meets the "egregious[ness]" standard.  There is also no allegation that American Honda's alleged conduct was "part of a pattern aimed at the public generally."  Accordingly, the punitive damages claim should be dismissed.  <u>See</u> <u>New York University v. Continental Ins. Co.</u>, 87 N.Y.2d at 320 (dismissing punitive damages claim from Complaint).

\\NY - 029014/000056 - 2481895 v1

## CONCLUSION

For all of the foregoing reasons, American Honda respectfully requests that its motion to stay or, alternatively, to dismiss the Complaint pursuant to Rule 12(b)(6) be granted.

Dated:  October 5, 2012                                    HOGAN LOVELLS US LLP


By____/s/ John J. Sullivan_____
    John J. Sullivan
    Bar Roll No. 510802
    875 Third Avenue
    New York, New York 10022
    (212) 918-3000
    *Attorneys for Defendant American Honda Motor Co., Inc.*

\\NY - 029014/000056 - 2481895 v1