UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

V.M. PAOLOZZI IMPORTS, INC, d/b/a
DEALMAKER HONDA OF WATERTOWN and
DEALMAKER OF POTSDAM, LLC d/b/a
DEALMAKER HONDA OF POTSDAM and
ONONDAGA DEVELOPMENT, LLC and PRIME,
L.L.C. and PHILIP J. SIMAO,

**AMENDED COMPLAINT**

Civil Action No.:
7:12-cv-01052-FJS-ATB

Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC.

Defendant.

---

Plaintiffs, V.M. Paolozzi Imports, Inc. d/b/a DealMaker Honda of

Watertown, DealMaker of Potsdam, LLC d/b/a DealMaker Honda of Potsdam,

Onondaga Development, LLC, Prime, L.L.C., and Philip J. Simao (collectively,

"Plaintiffs"), by their undersigned attorneys, Bond, Schoeneck & King, PLLC, for their

Amended Complaint herein, allege as follows:

## THE PARTIES

1.     Plaintiff V.M. Paolozzi Imports, Inc. d/b/a DealMaker Honda of Watertown

("DealMaker Watertown") is a New York corporation having had its principal place of

business at 18375 U.S. Route 11, Watertown, New York 13601.

2.     Plaintiff DealMaker of Potsdam, LLC d/b/a DealMaker Honda of Potsdam

("DealMaker Potsdam") is a New York limited liability company having its principal place

of business at 42 Maple Street, Potsdam, New York 13676.  DealMaker Watertown and

DealMaker Potsdam are collectively referred to herein as the "DealMaker Entities".

2176421.2 9/11/2013

3.      Plaintiff Onondaga Development, LLC ("Onondaga Development") is a New York limited liability company having its principal place of business at 137 Main Avenue, Watertown, New York 13601.

4.      Plaintiff Prime, L.L.C. ("Prime") is a New York limited liability company having its principal place of business at 137 Main Avenue, Watertown, New York 13601.

5.      Plaintiff Philip J. Simao ("Simao"), an individual, is a citizen and resident of the State of New York; a Member of DealMaker Potsdam, Onondaga Development, and Prime; and the President of DealMaker Watertown.

6.      Upon information and belief, Defendant American Honda Motor Co., Inc. ("Honda" or "Defendant") is a California corporation with its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1222 and 28 U.S.C. § 1331.  Because the parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has jurisdiction under 28 U.S.C. § 1332.  Jurisdiction over the state law claims is appropriate under 28 U.S.C. § 1367(a) and the principle of pendent jurisdiction.

8.      Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the Northern District of New York, and a substantial part of the property that is the subject of this action is situated in the Northern District of New York.

2176421.2 9/11/2013

9.      This Court has personal jurisdiction over Defendant because Defendant is a foreign authorized corporation and has designated an agent for service of process within the state.  Defendant also transacts business within the state and in the Northern District of New York, and entered into Automobile Dealer Sales and Service Agreements with Dealmaker Watertown and DealMaker Potsdam, respectively, which agreements constitute contracts to provide goods or services in New York State.  This action arises out of Defendant's domestic business activities and its contracts with DealMaker Watertown and DealMaker Potsdam.

## BACKGROUND

10.     On or about September 14, 2004, Honda and DealMaker Watertown entered into an Automobile Dealer Sales and Service Agreement, a true and correct copy of which is attached as Exhibit A (the "Watertown Agreement").

11.     Pursuant to the Watertown Agreement, Honda gave DealMaker Watertown the right to sell and service Honda vehicles at a new dealership to be established at 18375 U.S. Route 11, Watertown, New York, and DealMaker Watertown undertook to establish and operate the Honda dealership at that location.

12.     DealMaker Watertown leased its facilities from Onondaga Development, the owner of the real estate.  Onondaga Development is a third-party beneficiary of the Watertown Agreement.

13.     Because the DealMaker Watertown dealership was a successful operation, Honda pursued DealMaker to apply for a dealership in Potsdam, New York. DealMaker was the winning applicant among other dealer applicants.

14.     On or about June 21, 2008, Honda and DealMaker Potsdam entered into an Automobile Dealer Sales and Service Agreement, a true and correct copy of which is attached as Exhibit B (the "Potsdam Agreement").

15.     Pursuant to the Potsdam Agreement, Honda gave DealMaker Potsdam the right to sell and service Honda vehicles at a new dealership to be established at 42 Maple Street in Potsdam, New York, and DealMaker Potsdam undertook to establish and operate the Honda dealership at that location.

16.     Prior to 2007, Mark Picarazzi had been the dealer principal for DealMaker Watertown and other DealMaker automobile dealerships.  Mr. Picarazzi had extensive experience in the automobile business.  Simao had none, but was the majority owner, and the financial strength behind both DealMaker Entities.

17.     In 2007, it was discovered that other DealMaker automobile dealerships owned by Simao and managed by Mr. Picarazzi were out of trust.  At the request of one of his lenders, Simao brought in an outside consultant, Barry Bourgeois, who had years of experience with Ford Motor Company, to manage the dealerships along with Mr. Picarazzi as Simao had no experience in the automobile industry and had not been involved in the day-to-day operations in the dealerships.  Mr. Picarazzi was removed from operations in early 2008 and Mr. Bourgeois continued with the management of the dealerships.  Simao stepped in to manage the dealerships in December 2008 in an attempt to remedy the issues that had arisen under Mr. Picarazzi's management.

18.     Prior to executing the Potsdam Agreement, Honda made certain representations regarding the appropriate size for the Potsdam dealership, the

appropriate quantity of inventory, and the volume of sales that could be expected, among other details.

19.    At the time DealMaker Potsdam and Honda entered into the Potsdam Agreement, Honda had full knowledge that Mr. Picarazzi was no longer involved with the DealMaker Entities and that Simao's experience was in real estate, not the management of automobile dealerships.  Despite this knowledge, Honda made Simao the dealer principal for the DealMaker Potsdam dealership.

20.    Honda knew that Simao was not experienced in or knowledgeable of the automobile industry, and that Simao was completely relying on Honda concerning the size, sales, and inventory necessary for operation of the dealership.

21.    At the Potsdam location, Honda required the construction of a new 16,028 square foot Honda image store, and approved the construction of a 19,698 square foot facility.

22.    DealMaker Potsdam entered into an agreement with Prime, whereby Prime would construct the new facility to meet Honda's requirements, and DealMaker Potsdam would lease the facility from Prime.

23.    Honda received, reviewed, and approved the lease agreement between Prime and DealMaker Potsdam, including the amount of the rental payments due to Prime, before it was executed.  Indeed, the terms of the lease agreement were expressly included in the Authorized Location Attachment to the Potsdam Agreement, and thereby incorporated into that Agreement.

24.    Prime is a third-party beneficiary of the Potsdam Agreement between DealMaker Potsdam and Honda.  This is explicitly demonstrated by the Authorized

Location Attachment to the Potsdam Agreement, which states that DealMaker Potsdam and Honda agreed that Prime would be entitled to rental payments in excess of $36,000 per month for the dealership property.

25.    The Letter of Intent executed by Simao and Honda on May 3, 2007 and May 4, 2007, respectively, provided that DealMaker Potsdam would be open for business no later than June 30, 2008.

26.    By 2008, the national economy and national car sales were in a state of recession and collapse and DealMaker Potsdam attempted to obtain permission from Honda to postpone the opening of the Potsdam dealership.

27.    Honda waived the provision in the Letter of Intent requiring DealMaker Potsdam to be open by June 30, 2008.  However, on October 27, 2008, Honda unilaterally set a new, arbitrary schedule for DealMaker Potsdam to open, threatening to revoke the dealership unless it opened on November 3, 2008.

28.    A revocation would have left Prime with a vacant, specialty-use facility specifically designed as a Honda dealership, and obligated under the $24,000 per month twenty-year mortgage Prime had incurred to build the facility.

29.    A revocation would also have left DealMaker Potsdam obligated under the Lease with Prime, but with no potential for future income to satisfy that obligation.

30.    Simao met with Bill Bergmann from Honda on or about October 31, 2008 in Sackets Harbor, New York, along with Simao's consultant David Grandeau, who is an attorney and was the Executive Director of the New York Lobby Commission, a New York State ethics regulatory agency.  Simao and Mr. Grandeau met with Mr. Bergmann to advise him of the problems experienced by the other DealMaker dealerships in an

attempt to convince Mr. Bergmann to not force Simao to open the DealMaker Potsdam location at that time.

31.     Simao also informed Mr. Bergmann that the experienced manager of DealMaker Watertown, who Simao was going to move to Potsdam to manage the DealMaker Potsdam location, was out of work on medical leave and that DealMaker Potsdam would not have qualified management to operate the Potsdam location.

32.     Simao impressed upon Mr. Bergmann and Honda that opening DealMaker Potsdam in the worst economic climate in decades without appropriate management was a recipe for disaster.

33.     At this time, Honda had no financial investment in the DealMaker Potsdam location.  Honda contributed no money toward the site or building of the Potsdam location and, accordingly, had no risk.

34.     Despite this, Honda rejected requests for an extension of time to open, and over DealMaker Potsdam's strong objections, it opened on or about November 18, 2008 in an already distressed condition, nearing the slow winter auto purchasing season with insufficient management to operate the location successfully.

35.     At all times, Honda was aware of the financial and market situation nationally and in northern New York.  Honda had also reviewed and approved all of DealMaker Potsdam's applications and pro formas for the Potsdam location.  At no time did Honda adjust its requirements, expectations or projections for the new dealership despite the unprecedented collapse in the market.

36.     The forced opening of DealMaker Potsdam during that period of time caused significant losses not only to DealMaker Potsdam but to DealMaker Watertown

2176421.2 9/11/2013

because it exhausted financial and personnel resources from DealMaker Watertown leading to the demise of both DealMaker Entities.

37.     Floor plan, and other dealership-related financing was provided to both DealMaker Watertown and DealMaker Potsdam by American Honda Finance Corporation, a California corporation, which, upon information and belief, is wholly or partly owned and controlled by Honda ("Honda Finance").

38.     Throughout 2009, DealMaker Watertown and DealMaker Potsdam struggled to make required payments to Honda Finance.  These financial issues were routinely discussed with Honda representatives, who, upon information and belief, were in regular and detailed communication with Honda Finance on these matters.

39.     Through these ongoing and regular discussions, representatives of Honda and Honda Finance were aware of Simao's efforts to sell both Honda dealerships and get out of the automobile business.

40.     In August 2009, Simao, on behalf of DealMaker Watertown, met with Honda Finance representatives to discuss plans to sell the all of the assets of DealMaker Watertown to a reputable existing automobile dealer for $4.4 million, a deal that was later negotiated to $5.1 million.  Honda received the same information because representatives of Honda spoke directly with the interested party about the sale of DealMaker Watertown.

41.     Representatives of Honda and Honda Finance promised to work with the DealMaker Entities through its financial difficulties and to assist in the sale of both DealMaker Watertown and DealMaker Potsdam.

2176421.2 9/11/2013

42.     Upon information and belief, both Honda and Honda Finance were talking with potential purchasers about purchasing the assets of the DealMaker Entities.

43.     During the course of August 2009, Simao also communicated to both Honda and Honda Finance that Simao was selling or closing all of his other dealerships to direct his resources exclusively on working with Honda to find qualified dealers to purchase the two DealMaker Entities.

44.     Representatives of Honda specifically assured Simao and representatives of the DealMaker Entities that Honda would assist and cooperate in Plaintiffs' efforts to sell the dealerships in an orderly way as ongoing concerns.

45.     In November 2009, knowing that Simao was preparing to sell DealMaker Watertown and in the midst of the economic crises, Honda demanded that DealMaker Watertown construct new dealership facilities at 18375 U.S. Route 11, Watertown, New York.  Honda advised Simao that because DealMaker Watertown had not yet constructed the new facility, that it was in breach of the Letter of Intent between the parties and was also in breach of the Watertown Agreement.

46.     In December 2009, Honda also notified both DealMaker Watertown and DealMaker Potsdam of working capital deficiencies which Honda alleged to be a breach of the Watertown Agreement and Potsdam Agreement.

47.     Because Honda forced Simao's hand by insisting that DealMaker Potsdam open in the midst of a national recession and automobile sales collapse, over the objections of both Simao and DealMaker Potsdam, Simao, who did not have expertise in the car industry, was relying on Honda to cooperate in Simao's efforts to

Case 7:12-cv-01052-FJS-ATB   Document 29   Filed 09/11/13   Page 10 of 24

find a buyer for both of the dealerships, and to allow DealMaker Watertown and DealMaker Potsdam to continue operating in the interim.

48.     Although Honda was already engaged in discussions with potential purchasers for the DealMaker Entities, Honda required DealMaker to formally request its assistance in selling the assets of DealMaker Watertown by submitting to it a letter requesting such assistance on a form provided to DealMaker Watertown by Honda.  On January 14, 2010, DealMaker Watertown submitted the letter to Honda formally requesting Honda's assistance in seeking prospective buyers for DealMaker Watertown.

49.     In the Watertown Agreement and Potsdam Agreement, the dealerships were precluded from transferring ownership in the dealerships without the prior written approval of Honda, which could not be unreasonably withheld.

50.     Five days after the January 14, 2010 letter by DealMaker Watertown to Honda, Honda Finance issued a letter dated January 19, 2010 demanding immediate payment of $2,571,093.45 from DealMaker Potsdam and $3,744,844.67 from DealMaker Watertown.  Honda Finance threatened in that letter that if full payment was not made by January 27, 2010, it would make arrangements to pick up the vehicles financed by Honda Finance.

51.     On January 21, 2010, Honda sent separate letters to DealMaker Watertown and DealMaker Potsdam stating that Honda had received notice from Honda Finance that the new vehicle floor line credit had been suspended or reduced below the minimum amount required.  Honda stated that such a suspension or reduction was in breach of the Watertown Agreement and Potsdam Agreement.  Honda gave DealMaker Watertown and DealMaker Potsdam sixty days to have new vehicle floor line credit in

place.  Honda threatened that it may divert vehicle deliveries, cancel existing vehicle orders and attempt to re-distribute all affected vehicles to other dealers.

52.     Within a period of one week after DealMaker Watertown asked Honda for its assistance in selling the assets of the dealership, Honda Finance demanded immediate payment of more than $7.3 million from DealMaker Watertown and DealMaker Potsdam, suspended the dealerships' floor line credit, and Honda issued a notice to both dealerships declaring a default under its agreements with the dealerships and requiring that such defaults be remedied within sixty days.

53.     Had Simao known that Honda was not going to cooperate in the efforts to sell the dealerships in an orderly way as ongoing concerns as it represented, Simao would have proceeded with the sale of DealMaker Watertown in the fall of 2009.

54.     By forcing the opening of DealMaker Potsdam in the worst economic climate in decades, Honda caused DealMaker Potsdam to incur substantial losses which, in turn, caused DealMaker Watertown suffer similar losses.

55.     During the winter of 2010, the DealMaker Entities worked with Honda Finance to negotiate a workout plan and, thereafter, a forbearance agreement.

56.     At all times, Simao was in close contact with representatives of Honda about the negotiations with Honda Finance.

57.     Throughout this period, Simao sought Honda's cooperation, as any workout or forbearance agreement reached with Honda Finance would be meaningless if Honda terminated the franchises because of the asserted breaches to the Watertown Agreement and Potsdam Agreement that Honda noticed in November and December of 2009 and because of the breach relating to the dealership financing which was noticed

2176421.2 9/11/2013

by Honda in January 2010. Simao met with Chris Miller of Honda personally in February of 2010 and Mr. Miller assured him that Honda would provide the DealMaker Entities with its cooperation.

58.     Honda's cooperation in resolving the dealerships' financing issues was essential, as Honda had to consent to the terms of a forbearance agreement, and as a result held a complete veto over any such arrangement.

59.     Simao contacted Honda on multiple occasions to resolve the issues raised by Honda in November 2009 where Honda asserted that the DealMaker Watertown breached the Watertown Agreement because it hadn't built new dealer facilities in Watertown and in December 2009 when Honda asserted that the dealerships failed to maintain sufficient working capital in breach of their agreements with Honda. Simao also contacted Honda to determine whether the agreement reached between DealMaker Watertown, DealMaker Potsdam and Honda Finance complied with the financing terms of the Watertown Agreement and Potsdam Agreement.

60.     Certainly, Simao, DealMaker Watertown and DealMaker Potsdam could not resolve issues with Honda Finance without receiving assurances from Honda that it would not turn around and terminate one or both of the dealership agreements.

61.     Simao was rebuffed by representatives of Honda, who refused to provide contractual assurances regarding the DealMaker Entities. The position of the Honda representatives was that Honda had nothing whatsoever to do with any agreement between the DealMaker Entities and Honda Finance.

62.     During the period of time that the negotiations with Honda Finance were taking place, Honda withheld monies owed by Honda to DealMaker Watertown and

DealMaker Potsdam for dealer cash back incentives.  Simao spoke with Chris Miller of Honda about this issue and Mr. Miller informed Simao that legal counsel to Honda advised that the dealer cash back incentives should not be released to DealMaker Watertown or DealMaker Potsdam.  This, despite the fact that neither DealMaker Watertown nor DealMaker Potsdam had outstanding payments due and owing to Honda.

63.     By the spring of 2010, the DealMaker Entities and Simao had all of the material terms of a workout or forbearance agreement in place with Honda Finance and, at that point, Honda Finance insisted that Honda be released by the DealMaker Entities and Simao as a condition of any agreement between the DealMaker Entities, Simao and Honda Finance.

64.     Upon information and belief, Honda required Honda Finance to seek a release running to Honda, while simultaneously taking the position with Simao and the DealMaker Entities in writing that Honda was not a party to those discussions and could provide no assurances, no cooperation, and play no role in them.

65.     As a direct result of Honda's refusal to cooperate by insisting that it obtain a release and by refusing to give the DealMaker Entities written assurances regarding the continuing operations of the DealMaker Entities, no agreement was reached between the DealMaker Entities and Honda Finance.

66.     After this point, United Galaxy Association, LLC, the same broker that previously found a willing buyer to purchase DealMaker Watertown in 2009, brought to the DealMaker Entities another fully-qualified current Honda dealer to purchase the DealMaker Entities.

67.     Both Simao and representatives of the prospective purchaser spoke with representatives of Honda.  Through them, Honda was aware that the purchase would allow DealMaker to pay off Honda Finance, relieve Prime of the financial burden of the mortgage and defaulted lease with DealMaker Potsdam, and relieve Simao of liability on certain personal guarantees.

68.     Honda was well aware of this but nevertheless refused to approve or even consider the prospective purchaser as a buyer for the dealerships, destroying any chance that the Plaintiffs could avoid the financial injuries that then befell them.  Honda asserted that it was not interested in the proposed deal with the prospective purchaser because it did not offer any significant consideration to Honda and because the DealMaker Entities would not release Honda from any claims that they may have against Honda.

69.     Crushing financial obligations on DealMaker Watertown, DealMaker Potsdam, Prime, Onondaga Development, and Simao were a direct result of Honda's insistence on opening DealMaker Potsdam in November 2008, approval of the lease agreement between DealMaker Potsdam and Prime although it encompassed an excessive and unmanageable financial burden, requirement that excessive inventory be purchased, requiring the construction of an oversized building for DealMaker Potsdam; inducement of DealMaker Watertown to discontinue discussions with a bona fide prospective purchaser in 2009, the refusal to cooperate to allow an agreement to be reached with Honda Finance; and refusal to approve a qualified prospective buyer of DealMaker Watertown and Dealmaker Potsdam in 2010, all contrary to its duties and agreements with DealMaker Watertown and DealMaker Potsdam.

2176421.2 9/11/2013

70.     DealMaker Watertown sustained severe and foreseeable economic injuries and harm as a result of Honda's actions.

71.     DealMaker Potsdam sustained severe and foreseeable economic injuries and harm as a result of Honda's actions.

72.     Onondaga Development sustained severe and foreseeable economic injuries and harm as a direct result of Honda's actions.

73.     Prime sustained severe and foreseeable economic injuries and harm as a direct result of Honda's actions.

74.     Simao, as the managing Member of DealMaker Potsdam, Onondaga Development, and Prime, the majority owner of DealMaker Watertown, and the personal guarantor of all, suffered enormous and foreseeable economic injuries and harm as a result of Honda's actions.

## AS AND FOR A FIRST CAUSE OF ACTION

75.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "74" as though fully set forth herein.

76.     Paragraph "1" of both the Potsdam Agreement and the Watertown Agreement expressly provides that: "Achievement of the purposes of the Dealer Agreement is premised upon the mutual understanding and cooperation between American Honda and Dealer.  American Honda and Dealer have entered into this Dealer Agreement in reliance upon the integrity, ability and express intention of each party to deal fairly with the consuming public and with each other."

77.     The Potsdam Agreement and the Watertown Agreement also encompass an implied covenant of good faith and fair dealing.

2176421.2 9/11/2013

78.     Defendant breached its express and implied contractual duty to exercise good faith and deal fairly with DealMaker Potsdam by forcing DealMaker Potsdam to open without the expertise of an experienced dealer principal and with a lease burden, inventory, and sales requirements that Defendant knew were unsustainable even in a good economic climate, let alone the unprecedented recession in the automotive industry in 2008, over DealMaker Potsdam and Simao's strenuous objections.

79.     The opening of DealMaker Potsdam also caused financial and personnel resources to be exhausted from the successful DealMaker Watertown operation and, thereby, resulted in significant losses to DealMaker Watertown.

80.     Defendant's actions caused Plaintiffs serious and foreseeable economic damages.

## AS AND FOR A SECOND CAUSE OF ACTION

81.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "80" as though fully set forth herein.

82.     Paragraph "1" of both the Potsdam Agreement and the Watertown Agreement expressly provides that: "Achievement of the purposes of the Dealer Agreement is premised upon the mutual understanding and cooperation between American Honda and Dealer.  American Honda and Dealer have entered into this Dealer Agreement in reliance upon the integrity, ability and express intention of each party to deal fairly with the consuming public and with each other."

83.     The Potsdam Agreement and the Watertown Agreement also encompass an implied covenant of good faith and fair dealing.

84.     Defendant breached its express and implied contractual duty to exercise good faith and deal fairly with DealMaker Potsdam and DealMaker Watertown by preventing the DealMaker Entities from reaching a forbearance or workout agreement with Honda Finance.

85.     Defendant's actions caused Plaintiffs serious and substantial economic damages.

### AS AND FOR A THIRD CAUSE OF ACTION

86.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "85" as though fully set forth herein.

87.     DealMaker Watertown, DealMaker Potsdam and Simao had all of the material terms of a workout or forbearance agreement in place with Honda Finance when Honda Finance insisted that Defendant be released by the DealMaker Entities and Simao as a condition of any agreement between the DealMaker Entities, Simao and Honda Finance.

88.     Upon information and belief, Defendant required Honda Finance to seek a release running to Honda, while simultaneously taking the position with Simao and the DealMaker Entities in writing that Defendant was not a party to those discussions and could provide no assurances, no cooperation, and play no role in them.

89.     DealMaker Watertown, DealMaker Potsdam and Simao were under extreme pressure to resolve their financing issues with Honda Finance so that they could continue operating the dealerships and continue to pursue the sale of the dealerships as going concerns.

90.     Defendant had no justifiable reason to seek a release from the DealMaker Entities and Simao.

91.     Defendant knew that by not entering into an agreement with Honda Finance, DealMaker Watertown, DealMaker Potsdam and Simao would suffer serious and substantial economic loss.

92.     Defendant used this economic duress in an attempt to extort a release of claims against Honda from DealMaker Watertown, DealMaker Potsdam and Simao.

93.     The agreement with Honda Finance failed as a direct result of Defendant's insistence that it be released from claims by DealMaker Potsdam, DealMaker Watertown and Simao.

94.     Defendant tortuously interfered with the business relations and/or prospective contractual relations between DealMaker Watertown, DealMaker Potsdam, Simao and Honda Finance.

95.     Defendant's actions caused Plaintiffs serious and substantial economic damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

96.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "95" as though fully set forth herein.

97.     Paragraph "1" of both the Potsdam Agreement and Watertown Agreement expressly provides that: "Achievement of the purposes of the Dealer Agreement is premised upon the mutual understanding and cooperation between American Honda and Dealer.  American Honda and Dealer have entered into this Dealer Agreement in

reliance upon the integrity, ability and express intention of each party to deal fairly with the consuming public and with each other."

98.    The Potsdam Agreement and Watertown Agreement also encompass an implied covenant of good faith and fair dealing.

99.    Defendant breached its express and implied contractual duty to exercise good faith and deal fairly with DealMaker Potsdam and Prime, a known third-party beneficiary of the Potsdam Agreement, DealMaker Watertown and Onondaga Development, a known third-party beneficiary of the Watertown Agreement, by making false assurances to assist the DealMaker Entities through its financial difficulties and the sale of the dealerships and by refusing to consider or approve a sale of the dealerships to an existing, qualified Honda dealer.

100.    Defendant's actions caused Plaintiffs serious and substantial economic damages.

## **AS AND FOR A FIFTH CAUSE OF ACTION**

101.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "100" as though fully set forth herein.

102.    At all times relevant to this Complaint, DealMaker Watertown was an automobile dealer, as that term is defined in the Automobile Dealers' Day in Court Act, 15 U.S.C. §1221, *et seq.* ("ADDCA").

103.    Honda is an automobile manufacturer engaged in commerce, within the meaning of the ADDCA.

104.    A manufacturer-dealer relationship existed between DealMaker Watertown and Honda, as memorialized in the Watertown Agreement.

105.    Honda failed to act in good faith by:  intentionally placing DealMaker Watertown in a distressed position by forcing the opening of DealMaker Potsdam in 2008; inducing DealMaker Watertown through false assurances to discontinue an agreement with a bona fide prospective purchaser in 2009, wrongfully withholding monies owed by Honda to DealMaker Watertown for dealer cash back incentives; refusing to cooperate to allow an agreement to be reached with Honda Finance; and refusing to approve the qualified prospective buyer of DealMaker Watertown in 2010.

106.    Honda's failure to act in good faith caused DealMaker Watertown substantial damages.

107.    Therefore, Honda is liable to DealMaker Watertown under the ADDCA.

## AS AND FOR A SIXTH CAUSE OF ACTION

108.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "107" as though fully set forth herein.

109.    At all times relevant to this Complaint, DealMaker Potsdam was an automobile dealer, as that term is defined in the Automobile Dealers' Day in Court Act, 15 U.S.C. §1221, *et seq.* ("ADDCA").

110.    Honda is an automobile manufacturer engaged in commerce, within the meaning of the ADDCA.

111.    A manufacturer-dealer relationship existed between DealMaker Potsdam and Honda, as memorialized in the Potsdam Agreement.

112.    Honda failed to act in good faith by: forcing DealMaker Potsdam to open for business in the midst of an unprecedented recession in the automobile sales industry, under the threat of revoking the franchise; intentionally placing DealMaker

-20-

Potsdam in a distressed position without the ability to fund continuing operations; wrongfully withholding monies owed by Honda to DealMaker Potsdam for dealer cash back incentives; refusing to cooperate to allow an agreement to be reached with Honda Finance; and refusing to approve the qualified prospective buyer of DealMaker Potsdam in 2010.

113.   Honda's failure to act in good faith caused DealMaker Potsdam substantial damages.

114.   Therefore, Honda is liable to DealMaker Potsdam under the ADDCA.

## AS AND FOR A SEVENTH CAUSE OF ACTION

115.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "114" as though fully set forth herein.

116.   Paragraph "1" of both the Potsdam Agreement and Watertown Agreement expressly provides that: "Achievement of the purposes of the Dealer Agreement is premised upon the mutual understanding and cooperation between American Honda and Dealer.  American Honda and Dealer have entered into this Dealer Agreement in reliance upon the integrity, ability and express intention of each party to deal fairly with the consuming public and with each other."

117.   The Potsdam Agreement and Watertown Agreement also encompass an implied covenant of good faith and fair dealing.

118.   Although the Defendant had the contractual right to approve the transfer of ownership of a dealership, such approval could not be unreasonably withheld.

119.   DealMaker Watertown had a prospective agreement to sell DealMaker Watertown to a third-party in 2009.

120.   Defendant was fully aware of this prospective agreement.

121.   Through its false assurances to assist the DealMaker Entities through its financial difficulties and the sale of the dealerships, Defendant interfered with that agreement by dishonestly, unfairly, and improperly inducing DealMaker Watertown to discontinue negotiations and forego the sale.

122.   Defendant also unreasonably withheld its consent of the sale of the DealMaker Entities to the qualified prospective purchaser in 2010.

123.   Onondaga Development is a third-party beneficiary of the Watertown Agreement.

124.   Prime is a third-party beneficiary of the Potsdam Agreement.

125.   Defendant's conduct was in breach of its agreements with the DealMaker Entities and caused Plaintiffs serious and substantial economic injuries.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

126.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "125" as though fully set forth herein.

127.   The New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. L. §466 makes it unlawful for a franchisor to impose unreasonable restrictions on the franchised motor vehicle dealer's right to transfer or sell its franchise.

128.   Defendant refused to approve or even consider the qualified prospective buyer for the DealMaker Entities in 2010 because it did not offer any significant consideration to Defendant and because the DealMaker Entities would not provide a release to Defendant.

2176421.2 9/11/2013

129.    Defendant's refusal to consider the deal with this qualified prospective buyer because it did not offer significant consideration to Defendant and because the DealMaker Entities would not release Honda was an unreasonable restriction on the rights of DealMaker Watertown and DealMaker Potsdam to transfer or sell the franchise and therefore violated Section 466 of the New York Franchised Motor Vehicle Dealer Act.

130.    Therefore, Honda is liable to DealMaker Potsdam under the New York Franchised Motor Vehicle Dealer Act.

131.    Plaintiffs demand a jury trial.

**WHEREFORE**, Plaintiffs respectfully seek the following relief:

A.      First Cause of Action, damages in the amount to be determined at trial but in no event less than four million dollars;

B.      Second Cause of Action, damages in the amount to be determined at trial but in no event less than four million dollars;

C.      Third Cause of Action, damages in the amount to be determined at trial but in no event less than four million dollars;

C.      Fourth Cause of Action, damages in the amount to be determined at trial but in no event less than five million dollars;

D.      Fifth Cause of Action, damages in the amount to be determined at trial but in no event less than five million dollars;

E.      Sixth Cause of Action, damages in the amount to be determined at trial but in no event less than five million dollars;

2176421.2 9/11/2013

F.     Seventh Cause of Action, damages in the amount to be determined at trial but in no event less than five million dollars;

G.     Eighth Cause of Action, damages in the amount to be determined at trial but in no event less than five million dollars; and

H.     Such other and further relief as the Court deems just, proper, and equitable.

Dated:  September 11, 2013

BOND, SCHOENECK & KING, PLLC

By: _____
        Brian J. Butler, Esq. (510105)
        Stephen A. Donato, Esq. (101522)
        *Attorneys for Plaintiffs*
Office and P.O. Address
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000

2176421.2 9/11/2013