UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

V.M. PAOLOZZI IMPORTS, INC., d/b/a/
Dealmaker Honda of Watertown;
DEALMAKER OF POTSDAM, LLC, d/b/a/
Dealmaker Honda of Potsdam;
ONONDAGA DEVELOPMENT, LLC;
PRIME, LLC: and PHILIP J. SIMAO,

                    Plaintiffs,

      v.                               7:12-CV-1052
                                          (FJS/ATB)

AMERICAN HONDA MOTOR CO., INC.,

                    Defendant.
_____

**APPEARANCES**                                  **OF COUNSEL**

**BOND, SCHOENECK & KING, PLLC**       **BRIAN J. BUTLER, ESQ.**
One Lincoln Center                        **STEPHEN A. DONATO, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiffs

**McMAHON, KUBLICK & SMITH, P.C.**       **JAN S. KUBLICK, ESQ.**
500 South Salina Street
Suite 816
Syracuse, New York 13202
Attorneys for Plaintiffs

**HOGAN LOVELLS US LLP**                 **JOHN J. SULLIVAN, ESQ.**
875 Third Avenue
New York, New York 10022
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

Plaintiffs V.M. Paolozzi Imports, Inc., d/b/a/ DealMaker Honda of Watertown ("DealMaker Watertown"), DealMaker of Potsdam, LLC, d/b/a DealMaker Honda of Potsdam ("DealMaker Potsdam"), Onondaga Development, LLC, Prime, LLC, and Philip J. Simao bring this case against Defendant American Honda Motor Company, Inc. ("Honda Motor") in connection with Plaintiff DealMaker Watertown's and Plaintiff DealMaker Potsdam's (collectively, "Dealerships") operation as Honda dealers. *See generally* Dkt. No. 29, Amended Complaint.

Plaintiffs allege eight causes of action in their amended complaint, to wit (1) breach of the implied covenant of good faith and fair dealing in connection with the opening of DealMaker Potsdam; (2) breach of the implied covenant of good faith and fair dealing for preventing Plaintiff Dealerships from reaching a forbearance agreement with American Honda Finance Company, Inc. ("Honda Finance") concerning Plaintiff Dealerships' financing; (3) tortious interference with business relations for requesting that Plaintiff Dealerships release Defendant from liability as part of Plaintiff Dealerships' prospective forbearance agreement with Honda Finance; (4) breach of contract for making false assurances to assist with selling Plaintiff Dealerships; (5) violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221-1226 ("ADDCA"), for Defendant's conduct in its dealings with Plaintiff DealMaker Watertown; (6) violation of the ADDCA for Defendant's conduct in its dealings with Plaintiff DealMaker Potsdam; (7) breach of contract for wrongfully inducing Plaintiff Dealerships to forego an opportunity to sell their respective franchises in 2009; and (8) violation of the New York

Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law §§ 460-473 ("NY Act"), for refusing to consider a prospective buyer after Plaintiff Dealerships were subject to termination.

Pending before the Court is Defendant's motion for summary judgment. *See* Dkt. No. 33.

## II. BACKGROUND

**A. The parties and the franchise agreements**

Plaintiff Simao is a member or president of the other Plaintiffs. *See* Dkt. No. 29, Amended Complaint, at §§ 5-6. Plaintiffs Prime, LLC and Onondaga Development, LLC (collectively, "real estate entities") own the land upon which Plaintiff Dealerships were situated. *See id.* at §§ 3-4, 24. Defendant Honda Motor is an American subsidiary of Honda Motor Company, Ltd. *See* Dkt. No. 29, Am. Compl., at ¶ 6; Dkt. No. 39-3, Butler Dec., at 8.

Plaintiff Simao, acting on behalf of each Plaintiff Dealership, entered into franchise agreements with Defendant. *See generally* Dkt. Nos. 29-2, 29-3, Pls.' Exs.' "A" and "B" ("Watertown agreement" and "Potsdam agreement," collectively "franchise agreements"). Plaintiff Simao and Plaintiff Dealerships also contracted with Defendant's corporate affiliate, American Honda Finance Corp. ("Honda Finance"), to finance Plaintiff Dealerships' operations. *See generally Am. Honda Fin. Corp. v. V.M. Paolozzi Imports, Inc.*, No. 7:10-CV-155, Dkt. No. 1, Complaint.

The following details are germane with respect to the franchise agreements. With respect to Plaintiff real estate entities, the Potsdam agreement names Plaintiff Prime, LLC as DealMaker Potsdam's landlord and lists the amount of rent to be paid. *See* Dkt. No. 29-2, Pls.' Ex. "B", at 41. The Watertown agreement makes no mention of Plaintiff Onondaga Development, LLC, but

instead names Plaintiff Simao as the landowner of Plaintiff DealMaker Watertown's location. *See* Dkt. No 29-1, Pls.' Ex. "A", at 41.

With respect to Plaintiff DealMaker Potsdam's opening, the Potsdam agreement incorporates by reference a letter of intent identifying June 30, 2008, as the opening date. *See* Dkt. No. 29-2, Pls.' Ex. "B", at 49, 52. With respect to the sale of an ownership interest, both franchise agreements provide that Defendant must not unreasonably withhold consent to a sale. *See* Dkt. Nos. 29-1 and 29-2, Pls.' Exs. "A" and "B", at 8. Finally, with respect to termination, the franchise agreements provide that Defendant may terminate the franchises upon Plaintiff Dealerships' failure to "maintain all required aspects of Dealership Operations as an ongoing business" for seven consecutive business days. *See id.* at 27. Part of Plaintiff Dealerships' obligation was to "maintain . . . at least a minimum inventory and representative mix of Honda Vehicles." *See id.* at 14.

**B. Facts giving rise to Plaintiffs' causes of action**

The sum and substance of Plaintiffs' allegations boil down to the following narrative: that Defendant improperly forced DealMaker Potsdam to open at the height of the 2008 recession,[1] that it caused Honda Finance to foreclose on Plaintiff Dealerships' financing by wrongfully interfering with workout negotiations between Plaintiff Dealerships and Honda Finance, that it acted in bad faith by demanding strict compliance with the franchise agreements after considerable delay, and that it interfered with the prospective sale of Plaintiff Dealerships in

---

[1] Plaintiffs urge the Court to take judicial notice of the 2008 financial crisis and the ensuing auto-industry downturn. To the extent that it is widely known that the U.S. economy experienced a recession beginning in the fall of 2008, the Court takes judicial notice of this fact because Plaintiffs rely on it in bringing this suit. *See* Fed. R. Evid. 201(2); *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (quotation omitted).

2009 and again in 2010—all for the wrongful objective of gaining complete control over appointing the next Honda dealer in northern New York.

Plaintiffs allege that, in October of 2008, Plaintiff Dealerships informed Defendant that their experienced manager was out on medical leave, rendering Plaintiff DealMaker Potsdam "without appropriate management" for its opening. *See* Dkt. No. 29, Am. Compl., at ¶¶ 31-32. Nonetheless, notwithstanding the fact that opening during the ongoing recession and without Plaintiffs' veteran manager was a "recipe for disaster," Defendant "unilaterally set a new, arbitrary schedule for Plaintiff DealMaker Potsdam, threatening to revoke" its franchise if it failed to open by November 3, 2008. *See id.* at ¶¶ 27, 32.

According to Plaintiffs, this was only the beginning of strained relations between them and Defendant. Defendant allegedly forced Plaintiff DealMaker Watertown to construct a new dealership facility in the midst of the 2008 recession, after having waited four years to notify Plaintiff DealMaker Watertown that it was in breach. *See* Dkt No. 29, Am. Compl., at ¶ 45. Defendant further sent notices to Plaintiff Dealerships that they were in breach of their franchise agreements for having insufficient operating capital. *See id.* Additionally, Plaintiffs allege that Defendant withheld cashback incentive payments owed to Plaintiff Dealerships. *See id.* at ¶¶ 105, 112.

Plaintiffs also allege that Defendant wrongfully prevented them from trying to sell the Dealerships as going concerns throughout 2009 and 2010. *See* Dkt. No. 29-2, Am. Compl., at ¶¶ 40, 66, 105, 112. In particular, their claims concern two prospective sales—one in the summer of 2009 and another in the summer of 2010. *See id.* Plaintiffs allege that Defendant was both aware of and spoke to each of these prospective buyers. *See id.* at ¶¶ 40, 66-67. With respect to the 2009 prospective buyer, Plaintiffs allege that Defendant wrongfully induced

Plaintiff Dealerships not to further pursue completion of the sale. *See id.* at ¶¶ 40-42, 45-48. With respect to the 2010 prospective buyer, Plaintiffs allege that Defendant refused even to consider a sale. *See id.* at ¶¶ 66-67. However, Plaintiffs allege that Defendant also required Plaintiff Dealerships to make a formal request Defendant's assistance with selling. *See id.* at ¶ 48.

During the winter of 2009-10, Plaintiff Dealerships negotiated with Honda Finance to work out Plaintiff Dealerships' debt obligations, on which they were behind. *See* Dkt. No. 29-2, Am. Compl., at ¶ 55. Plaintiff Simao kept Defendant apprised of these negotiations. *See id.* at ¶ 56. Plaintiff Simao met personally with Defendant's representative, who assured him that Defendant would cooperate with respect to the workout. *See id.* at ¶ 57. Nevertheless, despite the fact that Plaintiff Dealerships and Honda Finance had agreed to all the material terms of a forbearance agreement, Honda Finance insisted that Plaintiffs release any claims against Defendant Honda Motor as part of any agreement. *See id.* at ¶ 63. In other words, Defendant "required Honda Finance to seek a release running to [Defendant], while simultaneously taking the position with [Plaintiff] Simao and [Plaintiff Dealerships] in writing that [Defendant] was not a party to those discussions and could provide no assurances" with respect to such discussions. *See id.* at ¶ 64.

As a result of Defendant's behavior, Plaintiffs allege, Honda Finance foreclosed upon Plaintiff Dealerships' financing. *See* Dkt. No. 29, Am. Compl., at ¶ 65. At oral argument, the parties agreed that Honda Finance repossessed Plaintiff Dealerships' inventory on May 3, 2010. In connection with these events, Plaintiffs allege that Honda Finance "is wholly or partly owned and controlled by Honda," meaning Defendant Honda Motor. *See* Dkt. No. 29-2, Am. Compl., at ¶¶ 6, 37. Defendant issued notices of termination to Plaintiff Dealerships on May 26, 2010,

because they had not sold new cars since May 3, 2010. *See* Dkt. No. 39-4, Simao Aff., at ¶¶ 8-12.

**C. The finance action**

On February 9, 2010, Honda Finance commenced a foreclosure action against, among others, V.M. Paolozzi Imports, Inc., DealMaker Potsdam, and Philip Simao. *See generally Am. Honda Finance Corp. v. V.M. Paolozzi Imports, Inc.*, No. 7:10-CV-155 ("finance action"), Dkt. No 1, Complaint.[2] Then-defendants counterclaimed, asserting two causes of action that are relevant here. *See generally* Dkt. No. 36, Answer.

First, the finance-action defendants advanced a breach of contract claim couched in terms of the implied covenant of good faith and fair dealing, alleging that Honda, *either through Honda Finance or Honda Motor*, acted in bad faith by insisting "that [DealMaker] Potsdam had to be opened in the middle of the worst recession since the Depression" and that, "[d]uring workout negotiations, [Honda Finance] gave the Dealerships certain assurances that it would not take certain legal actions, and then, once given the keys to the Dealerships in reliance upon these assurances, reneged and initiated legal action." *See id.* at ¶¶ 94, 96, 98-101. Second, they advanced an ADDCA claim alleging that Honda Finance is "[Defendant] Honda Motors' captive finance company," and that "[Honda Finance] . . . acted in bad faith in its performance of its contracts with the [Plaintiff] Dealerships." *Id.* at ¶¶ 94, 104-09. In particular, then-defendant Simao submitted a detailed affidavit describing the workout negotiations and their subsequent breakdown. *See generally* Dkt. No. 64-2, Simao Aff.[3] Notably, Defendant Honda Motor is mentioned only with respect to the DealMaker Potsdam opening. *See id.* at ¶ 7. Additionally,

---

[2] Subsequent citations within this subsection, except footnote 3, refer to the finance action.

[3] Defendant includes this affidavit with its filings in connection with the motion currently before the Court. *See* Dkt. No. 33-4, Def.'s Ex. "B."

there is no mention of the alleged request that Plaintiff Dealerships release all claims against Honda Motor.

The court dismissed these claims as lacking merit. On appeal, the Second Circuit affirmed. With respect to the ADDCA claim, the court held that Honda Finance did not act in bad faith. *See Am. Honda Fin. Corp. v. Simao*, 526 F. App'x 112, 114, 115-16 (2d Cir. 2013).

**D. The instant action**

Plaintiffs commenced this action against Defendant Honda Motor for actions arising out of its obligations under the franchise agreements, as well as its role in the finance negotiations. *See generally* Dkt. No. 29, Am. Compl. Plaintiffs assert the following claims:

- **First cause of action:** breach of the implied covenant of good faith and fair dealing for "forcing [Plaintiff] DealMaker Potsdam to open without the expertise of an experienced dealer principal and with a lease burden, inventory, and sales requirements that Defendant knew were unsustainable in a good economic climate, let alone the unprecedented recession . . . ." *See id.* at ¶ 78.

- **Second cause of action:** breach of the implied covenant of good faith and fair dealing for "preventing the [Plaintiff Dealerships] from reaching a forbearance or workout with Honda Finance." *See id.* at ¶ 84.

- **Third cause of action:** tortious interference with business relations by using economic pressure to extort Plaintiffs through "requiring Honda Finance to seek a release running to [Defendant,] while simultaneously taking the position that Defendant was not a party to those discussions." *See id.* at ¶¶ 88, 89, 94.

- **Fourth cause of action:** breach of "express and implied contractual dut[ies] to exercise good faith and deal fairly with" Plaintiffs by "making false assurances to assist" with the sale of Plaintiff Dealerships. *See id.* at ¶ 99.

- **Fifth cause of action:** violation of the ADDCA for failing to act in good faith with respect to Plaintiff DealMaker Watertown by "intentionally placing [Plaintiff] DealMaker Watertown in a distressed situation by forcing the opening of [Plaintiff] DealMaker Potsdam in 2008; inducing [Plaintiff] DealMaker Watertown through false assurances to discontinue an agreement with a bona fide prospective purchaser in 2009[;] wrongfully withholding monies owed by [Defendant] to [Plaintiff] DealMaker Watertown for dealer cash back incentives; and refusing to approve the

qualified prospective buyer of [Plaintiff] DealMaker Watertown in 2010." *See id.* at ¶ 105.

- **Sixth cause of action:** violation of the ADDCA for failing to act in good faith with respect to [Plaintiff] DealMaker Potsdam by "forcing [Plaintiff] DealMaker Potsdam to open for business in the midst of an unprecedented recession in the automobile sales industry, under the threat of revoking the franchise; intentionally placing [Plaintiff] DealMaker Potsdam in a distressed position without the availability to fund continuing operations; wrongfully withholding monies owed by [Defendant] to [Plaintiff] DealMaker Potsdam for dealer cash back incentives; refusing to cooperate to allow an agreement to be reached with Honda Finance; and refusing to approve the qualified prospective buyer of [Plaintiff] DealMaker Potsdam in 2010." *See id.* at ¶ 112.

- **Seventh cause of action:** breach of contract for "false assurances to assist the [Plaintiff Dealerships] through [their financial difficulties,]" and "unreasonably with[holding] . . . consent" for sale of Plaintiff Dealerships in 2010. *See id.* at ¶¶ 121-22.

- **Eighth cause of action:** violation of the NY Act for "refus[ing to] even consider the qualified prospective buyer for Plaintiff Dealerships in 2010" in retaliation for not providing a release. *See id.* at ¶ 128.

## III. DISCUSSION

**A. Standing of Plaintiffs Prime, LLC and Onondaga Development, LLC**

As a preliminary matter, Plaintiffs Prime, LLC and Onondaga Development, LLC lack standing to enforce the franchise agreements. A party seeking to enforce a contract as a third-party beneficiary must establish "'(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost[.]'" *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000) (quotation and other citation omitted). With respect to the parties' intent to benefit a third party, "the contract [should] clearly

- 9 -

evidence[] an intent to permit enforcement by the third party[.]" *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985) (citations omitted).

In this case, there is no evidence in the record tending to suggest that Plaintiffs Prime, LLC and Onondaga Development, LLC were intended third-party beneficiaries of their tenants' respective franchise agreements with Defendant. Although the Potsdam agreement does list Plaintiff Prime, LLC as Plaintiff DealMaker Potsdam's landlord along with the amount of rent to be paid, there is no language in the agreement evincing any intent to confer upon Plaintiff Prime, LLC a right to enforce the agreement. Neither is there any such language in the Watertown agreement with respect to Plaintiff Onondaga Development, LLC. Accordingly, the Court finds that Plaintiffs Prime, LLC and Onondaga Development, LLC were not intended beneficiaries of the franchise agreements between Plaintiff Dealerships and Defendant. *See Fourth Ocean Putnam Corp.*, 66 N.Y. at 45. For this reason, the Court dismisses all of Plaintiff Onondaga, LLC's and Plaintiff Prime, LLC's claims.

**B. *Res judicata***

The doctrine of *res judicata* precludes the relitigation of claims decided in "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (citations omitted). The doctrine bars parties from asserting claims that properly could have been raised in the prior action. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quotation, citation and footnote omitted). In this case, there is a dispute as to both sameness of claims and privity.

"'Whether or not [a] judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" *Id.* at 289 (quotation omitted). "'"Transaction" must be given a flexible, common-sense construction that recognizes the reality of the situation.'" *Id.* (quotation omitted). Put another way, the core question is whether both suits concern the same "'nucleus of operative fact.'" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quotation omitted).

Additionally, "[t]he doctrine of privity, which extends the *res judicata* effect of a prior judgment to nonparties who are in privity with the parties to the first action, is to be applied with flexibility." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) (citation omitted). Parties may be considered in privity where the interests of the nonparty were adequately represented in the first suit. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345-46 (2d Cir. 1995) (holding that "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions").

Where, as here, there are questions as to both sameness of claims and privity, the closer the identity of facts between the prior and instant actions, the more likely it is that the non-party's interests were adequately represented in the first action. *See John Street Leasehold, LLC v. Capital Mgmt. Resources, L.P.*, 283 F.3d 73, 75 (2d Cir. 2002) (*per curiam*) (affirming dismissal of a subsequent action against the FDIC where the causes of action were "'co-terminous as to time, space, origin, and effect, [and] many of the critical supporting allegations [were] identical'" to a prior case against the FDIC's agent). Other factors considered in this analysis are whether the "'witnesses and the evidence to the activities in both cases and the

evidence would be substantially the same,'" or whether the cases would make a convenient trial unit that the parties would expect to try together. *Id.* (quotation omitted). Moreover, "the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts *essential to the second* were [already] present in the first.'" *Waldman*, 207 F.3d at 110-11 (quotation omitted).

Comparing Plaintiffs' claims in this case with the finance-action counterclaims, it is clear that most of Plaintiffs' causes of action arise out of the same connected series of transactions as the finance action. Plaintiff Simao and Plaintiff Dealerships have alleged in both cases that Defendant Honda Motor, either controlling or colluding with Honda Finance, caused the demise of Plaintiff Dealerships by (1) forcing Plaintiff DealMaker Potsdam to open in November of 2008, (2) wrongfully inducing Plaintiff Dealerships not to pursue a prospective sale in 2009, and (3) sabotaging the finance negotiations, causing Plaintiff Dealerships to lose their financing. Plaintiffs' argument that these facts appeared in the finance action merely as "background information" is unavailing because they are relevant to the bad faith claims in both cases. *See Waldman*, 207 F.3d at 111 (rejecting the argument that overlapping facts were insufficiently related where such facts were alleged as "part of the same pattern of behavior" underlying each claim). Moreover, it is clear that the witnesses and the evidence with respect to these events would be substantially the same. *See John Street Leasehold*, 283 F.3d at 75. For these reasons, the Court finds that Plaintiffs' claims are the same claims as the finance action counterclaims to the extent that they concern the DealMaker Potsdam opening, the 2009 prospective sale, and the finance negotiations.[4]

---

[4] To the extent that Plaintiffs argue that their claims arising out of the spring, 2010 finance negotiations concern "post-litigation" events, this argument is inaccurate. Plaintiff Simao filed his counterclaims on May 12, 2010. *See* Dkt. No. 33-4, Def.'s Ex. "B," at 14. Honda Finance

With respect to privity, where a party makes "assertions of domination and control," such assertions can be sufficient to establish privity for *res judicata* purposes. *Melwani v. Jain*, No. 02 Civ. 1224, 2004 WL 936814, *8 (S.D.N.Y. Apr. 29, 2004), *subsequent opinion*, 2004 WL 1900356, *3 (S.D.N.Y. Aug. 24, 2004); *see also Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 557 n.15 (E.D. Va. 2007) (noting that alleging an agency relationship between General Motors and GMAC would "impart . . . preclusive benefit" to GM with respect to an earlier action against GMAC on the same claims (citation omitted)). In this case, Plaintiffs allege that Honda Finance "is wholly or partly owned and controlled" by Defendant, and in the finance action they alleged that, with respect to the DealMaker Potsdam opening, "Honda Finance and [Defendant Honda Motor] were working in tandem and were well aware of all actions the other was taking." *See* Dkt. No. 33-5, Def.'s Ex. "C," at ¶ 8. Thus, to the extent Plaintiffs allege that Defendant controlled Honda Finance in its dealings with Plaintiff Dealerships, they could have properly brought all such claims in the finance action. *See Field Auto* City, 476 F. Supp. 2d at 557 n.15. Accordingly, the Court finds that Defendant and Honda Finance are privies for purposes of *res judicata* with respect to Plaintiffs' claims.

For these reasons, the Court dismisses Plaintiffs' claims as barred by *res judicata* to the extent that they relate to the DealMaker Potsdam opening, the 2009 prospective sale, and all the negotiations relating to working out the Dealerships' financing with Honda Finance. Remaining are Plaintiffs' ADDCA claims and NY Act claims as they relate to the 2010 proposed sale, the 2009 Watertown facility demand, the 2009 capital deficiency notice, requiring Plaintiff

---

had foreclosed on Plaintiff Dealerships' financing and repossessed their inventory by May 3, 2010. Thus, any negotiations concerning a potential forbearance agreement would have been concluded before such date. Accordingly, because this conduct arises from the same connected series of transactions, namely, Plaintiff Dealerships' attempts to persuade Honda Finance not to foreclose, Plaintiffs properly could have brought this piece of their claim together with their finance counterclaims.

Dealerships to request assistance with selling their franchises, and the withholding of cashback incentives.

## C. Defendant's motion for summary judgment[5]

### *1. Legal standard*

Under Rule 56 of the Federal Rules of Federal Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (citation omitted). In addition, "[the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[the nonmoving party] must do more than simply show that

---

[5] The Court considers Defendant's motion as one for summary judgment because the parties have supplemented the pleadings, including statements of material fact not in dispute under this Court's local rules. *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008).

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citations omitted).

### 2. ADDCA claims

The Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221-1226 ("ADDCA"), provides that an "automobile dealer may bring suit against any automobile manufacturer engaged in commerce" for failure "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating" said franchise. 15 U.S.C. § 1222. In order to make out a claim under the ADDCA, a plaintiff must show (1) that the manufacturer coerced or intimidated the plaintiff dealer and (2) that such coercion or intimidation was designed to achieve some wrongful objective. *See Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90, 95 (2d Cir. 1987) (citations omitted).

"'If the manufacturer has an objectively valid reason for its actions, the plaintiff cannot prevail without evidence of an ulterior motive.'" *Action Nissan, Inc. v. Nissan N. Am.*, 454 F. Supp. 2d 108, 118 (S.D.N.Y. 2006) (quotation omitted). In particular, demanding strict adherence to contractual terms, even after considerable delay, does not constitute bad faith under the ADDCA absent some showing of a wrongful objective. *See Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F. Supp. 2d 384, 389 (S.D.N.Y. 2000). Conclusory statements of wrongful objective in the complaint are insufficient. *See Gen. Motors Corp. v. Dealmaker, LLC*, No. 07-CV-141, 2007 WL 2454208, *5 (N.D.N.Y. Aug. 23, 2007).

In this case, Plaintiffs' ADDCA claims must fail because there is no evidence in the record from which a reasonable jury could conclude that Defendant's behavior was designed to achieve a wrongful objective. With respect to these claims, Plaintiffs allege that Defendant (1)

refused to approve the qualified prospective buyer in 2010, (2) wrongfully induced Plaintiff Dealerships to discontinue pursuing a sale in 2009, (3) required Plaintiff Dealerships to make a formal request for assistance with selling their respective franchise interests, and (4) withheld monies owed to Plaintiff Dealerships in connection with dealer cashback incentives. Although Plaintiffs argue that Defendant "had the incentive" to force Plaintiff Dealerships out of business so as to exercise total control in choosing the next Honda dealer, this is not sufficient evidence upon which a reasonable factfinder could conclude that Defendant coerced Plaintiffs in order to achieve a wrongful objective. *See Zeno Buick-GMC, Inc. v. GMC Truck & Coach*, 844 F. Supp. 1340, 1346-47 (E.D. Ark. 1992) (applying *Empire Volkswagen* in finding no bad faith under the ADDCA where the franchisor, among other things, forced remodeling of dealership facility, refused to permit sale of the dealership interest, and failed to honor rebates).

Moreover, no reasonable jury could conclude that Defendant acted in bad faith by demanding that Plaintiff Dealerships comply with the franchise agreements. *See Lazar's Auto Sales*, 83 F. Supp. 2d at 389  For these reasons, the Court grants Defendant's motion with respect to Plaintiffs' ADDCA claims.

### 3. *NY Act Claims*

Under the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law §§ 460-473 ("NY Act"), an auto franchisor may not impose unreasonable restrictions on franchisees relative to sale of their ownership interests in the franchise. *See* N.Y. Veh. & Traf. Law § 466(1). The NY Act further provides that it is an unreasonable restriction "directly or indirectly to prevent or attempt to prevent a franchised motor dealer from obtaining the fair value of the franchise or the fair value of the dealership *as a going concern*[.]" *Id.* at § 466(2)

(emphasis added); *see also Gray v. Toyota Motor Sales, U.S.A., Inc.*, 806 F. Supp. 2d 619, 627 n.2 (E.D.N.Y. 2011). Thus, it is not unreasonable to refuse a request to sell *after* a franchise is already subject to termination. *See H-D Michigan, LLC v. Sovie's Cycle Shop, Inc.*, 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009); *Ganley v. Mazda Motor of Am., Inc.*, 367 F. App'x 616, 625-26 (6th Cir. 2010) (citing *H-D Michigan, LLC* and collecting authority for the proposition that refusal to approve a sale after notice of termination is not unreasonable because "there is little left to sell").

Further, under New York law, an auto franchisor may terminate a franchise on fifteen days' notice where the franchisee fails to conduct "customary sales and service operations" for seven consecutive business days. *See* N.Y. Veh. & Traf. Law § 463(2)(d)(3)(ii). Courts have held that the failure to sell new cars satisfies this provision. *See Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 93 CIV. 2189, 1995 WL 326475, *5 (S.D.N.Y. May 31, 1995). In this case, as counsel clarified at oral argument, it is undisputed that Plaintiff Dealerships stopped selling new cars on May 3, 2010. Not counting May 3 or May 26, 2010, there were sixteen business days between Honda Finance's repossession of Plaintiff Dealerships' inventory on May 3, 2010, and Defendant's notices of termination to Plaintiff Dealerships on May 26, 2010. In view of these facts, there can be no dispute that Plaintiff Dealerships failed to conduct "customary sales and service operations" for at least seven consecutive business days starting on May 3, 2010. *See Ganley*, 367 F. App'x at 625-26. Thus, the statutory requirement was satisfied; and Defendant's May 26, 2010 notices of termination to Plaintiff Dealerships were proper under New York law.

Accordingly, Defendant could not have been unreasonable in refusing to consider a prospective sale in June of 2010 because each of Plaintiff Dealerships' franchises was properly

subject to termination as of May 26, 2010. Moreover, Plaintiffs' contention in their response to Defendants' statement of material facts that the franchises did not terminate until August of 2010 is immaterial because, as the cases point out, the relevant date here is the notice of termination. *See H-D Michigan, LLC*, 626 F. Supp. 2d at 279. Thus, there is no evidence in this record from which a reasonable jury could conclude that Defendant "tried to prevent [Plaintiff Dealerships] from obtaining fair value" for their franchise interest. *See Gray*, 806 F. Supp. 2d at 627 n.2. For these reasons, the Court grants Defendant's motion with regard to Plaintiffs' NY Act claims.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions and oral arguments, as well as the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No 33, is **GRANTED** with respect to Plaintiff Onondaga Development, LLC's and Plaintiff Prime, LLC's claims because these Plaintiffs lack standing; and the Court further

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 33, is **GRANTED** with respect to Plaintiffs' claims concerning the DealMaker Potsdam opening, the 2009 prospective sale, and all the negotiations relating to working out the Dealerships' financing with Honda Finance because the doctrine of *res judicata* bars these claims; and the Court further

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 33, is **GRANTED** with respect to all other claims; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: December 2, 2015
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge